CRIBB, Respondent, vs. HIBBARD, SPENCER, BARTLETT & Co. and others, Garnishees, Appellants.

*May 23 — June 21, 1890.*

*Debtor and creditor: Voluntary assignment: Chattel mortgages: Assignment of accounts.*

1. A chattel mortgage of a stock of goods was given by a firm to secure an indebtedness a part of which had a few days before been assigned to the mortgagee by another creditor. The mortgage was subject to a prior one given to another creditor who was in possession of the property. There was no collusion between the mortgagees, each of whom in taking security acted for himself alone. The second mortgage did not cover the individual property of the partners, and it did not appear that it covered all of the firm property. *Held,* that it was not an assignment for the benefit of creditors within the meaning of sec. 1694, R. S.

2. Nor did an assignment of the ledger accounts of the firm to the second mortgagee as further security for the debt, whether considered by itself or in connection with the mortgage, bring the transaction within said section.

APPEAL from the Circuit Court for *Sauk* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The firm of Hagenahs & Geffert, composed of Geffert and John H. and Peter Hagenah, was in business, dealing in hardware, agricultural machinery, etc., from June, 1874, to January, 1883, when it was dissolved. In January, 1883, the firm of J. & P. Hagenah, composed of J. H. and Peter Hagenah, was formed, and carried on a similar business from January, 1883, to July 8, 1889. June 28, 1888, the said J. & P. Hagenah executed two promissory notes, each payable to *Hibbard, Spencer, Bartlett & Co.* (a corporation organized under the laws of Illinois) or order, one for $5,000 and interest, and the other for $3,226 and interest, each accompanied by a warrant of attorney authorizing the entry of judgment thereon. July 1, 1889, the said firm of J. & P.

Hagenah was indebted to sundry persons in a large amount in addition to said *Hibbard, Spencer, Bartlett & Co.* in the sum of $9,310.36, and Cribben, Sexton & Co., $471.81. July 3, 1889, said John H. Hagenah received a letter from one Stoddard, the credit man of *Hibbard, Spencer, Bartlett, & Co.*, from Chicago, to the effect that he would soon be at Reedsburg, and was going to help him (Hagenah) out of the bush. July 3, 1889, the said Cribben, Sexton & Co. sold, assigned, and transferred their said indebtedness and account against the said firm of J. & P. Hagenah to said *Hibbard, Spencer, Bartlett & Co.* July 5, 1889, the said John H. Hagenah went to Chicago, to see *Hibbard, Spencer, Bartlett & Co.*, and did see them and said Stoddard on Saturday, July 6, 1889, and was then and there informed by said Stoddard, in effect, that he would be in Reedsburg on the following Monday evening, and would help him out of the bush. John H. Hagenah thereupon returned to Reedsburg on Sunday morning, July 7, 1889.

On Monday morning, July 8, 1889, the said John H. Hagenah informed the firm of Morse, Winchester & Keith, known as the Citizens' Bank of Reedsburg, of his trip to Chicago, his indebtedness to *Hibbard, Spencer, Bartlett & Co.*, and the fact that he expected one of their men at Reedsburg that day. Thereupon John H. & Peter Hagenah executed to the said Citizens' Bank a note for $3,500, and a chattel mortgage upon their entire stock of hardware, machinery, tinware, and all stock of every description on the premises described, to secure the same, which note and chattel mortgage was given as a renewal of a similar note and mortgage given by them, but not filed, about two weeks before. After the delivery of such mortgage to the Citizens' Bank, and the filing of the same, the said Citizens' Bank thereupon took possession of the mortgaged property. Upon the evening of the same day said Stoddard came to Reedsburg from Chicago, and, after ascertaining the situ-

ation, and that the Citizens' Bank had obtained and filed said chattel mortgage, he thereupon obtained from the said J. & P. Hagenah a note executed by them, dated on that day, payable to *Hibbard, Spencer, Bartlett & Co.* or order, for $9,787.17 with interest at eight per cent., secured by chattel mortgage, duly filed, on the same property described in the mortgage to the Citizens' Bank.   On the same evening the said Stoddard obtained from the said J. & P. Hagenah an instrument in writing, of which the following is a copy:  "Assignment of Accounts.   For value received, we do hereby sell, assign, and transfer unto *Hibbard, Spencer, Bartlett & Co.*, of Chicago, Ills., all the accounts contained in this ledger, covering accounts due us.   J. H. Hagenah. Peter Hagenah.   Dated July 8, '89."   July 9, 1889, the several insurance policies on said mortgaged property were assigned by said J. & P. Hagenah to *Hibbard, Spencer, Bartlett & Co.* and the Citizens' Bank, mortgagees in possession.   At the several dates of July 9, 10, and 15, 1889, the said John H. and Peter Hagenah, respectively, gave deeds of their individual property to their individual creditors.

July 20, 1889, the plaintiff commenced this suit against John H. and Peter Hagenah.   August 5, 1889, the said *Hibbard, Spencer, Bartlett & Co.* was summoned as garnishee in said action.   August 13, 1889, the said *Hibbard, Spencer, Bartlett & Co.* answered said garnishee, and denied any and all indebtedness to the said J. & P. Hagenah, and also denied having in its possession any property belonging to them.   August 17, 1889, the plaintiff took issue on said garnishee answer.   August 19, 1889, the plaintiff recovered judgment by default against the said John H. & Peter Hagenah for $868.41.

Upon the trial of said garnishee action, and under the direction of the court, the jury found in effect as matters of fact (1) that the property so covered by the chattel mortgage so given to said Citizens' Bank was sold by them under

the stipulation on file for the sum of $3,900; (2) that said Citizens' Bank, before the sale mentioned, sold a part of said mortgaged property to the amount of $125, of which $81.37 was received by them in cash; (3) that said Citizens' Bank incurred expenses on account of the seizure, custody, and sale of said mortgaged property to the amount of $107.51; (4) that said Citizens' Bank was entitled to interest on the mortgage debt, amounting to $44.34; (5) that said *Hibbard, Spencer, Bartlett & Co.* had collected upon the ledger accounts so assigned to it the sum of $533.87, and that for $333.24 thereof it had taken promissory notes from the persons from whom such accounts were due; (6) that said chattel mortgage to said Citizens' Bank was and is a valid security, and the mortgagees therein were entitled to hold the proceeds of the mortgaged property so sold for the amount of their debt, interest, and expenses, as above found, less the amount of sales made by them prior to the final sale, to wit, for the sum of $3,526.85, and that the balance of said $3,900, being $373.15, should be paid into court, to be disposed of as the judgment therein should provide; (7) that the said chattel mortgage so given to *Hibbard, Spencer, Bartlett & Co.*, as well as the assignment of the accounts of the firm of J. & P. Hagenah to said corporation, was made for the benefit thereof, and for the benefit of the firm of Cribben, Sexton & Co. to the amount of $476.81, being the accounts so assigned by them to said corporation, and that said mortgage and assignment were and are fraudulent and void, as being in effect an assignment for the benefit of creditors, not executed as prescribed by law; that said *Hibbard, Spencer, Bartlett & Co.* was chargeable as such garnishee for and on account of said $373.15, and for and on account of said book-accounts so assigned to it as above found, and for the collections realized therefrom and the promissory notes taken on account thereof; that the said Citizens' Bank was in no manner chargeable as garnishee in the action.

Cribb vs. Hibbard, Spencer, Bartlett & Co. and others.

Thereupon judgment was entered against the said *Hibbard, Spencer, Bartlett & Co.*, as such garnishee, for the said sum of $533.87, and $373.15, making $907.02, and the same was thereupon directed to be paid over to the receiver appointed in said action, and by him to be thereupon paid as therein directed. From that part of said judgment in favor of the plaintiff and against the said *Hibbard, Spencer, Bartlett & Co.*, said corporation appeals.

*G. Stevens*, attorney, and *William F. Vilas*, of counsel, for the appellant.

*S. U. Pinney* and *A. L. Sanborn*, for the respondent.

CASSODAY, J. There is no statute in this state preventing any failing or insolvent debtor from paying or securing one or more of his creditors in preference to others, except as provided in ch. 349, Laws of 1883, and ch. 451, Laws of 1887, being sec. 1693a, S. & B. Ann. Stats. Those acts avoid certain securities and liens obtained in the ordinary way only when the debtor makes an assignment for the benefit of his creditors within sixty days after giving the securities or liens. To preserve such preferences, it is only necessary for the debtor to refrain from making such assignment during the sixty days mentioned, and this he will always do when he really desires to continue such preference. Since such is ordinarily his desire, the provisions for avoiding such securities and liens are very seldom available, and hence are of very little practical value. It is true that except for the wages of laborers, servants, and employees, the act of 1883 avoids " any and all assignments " thereafter " made for the benefit of creditors," which " contain or give any preference to one creditor over another creditor; " but that is only operative when such preference is contained or given *in the assignment itself*, and then its effect is to wholly avoid such assignment. While the debtor is thus precluded from giving any such preference in or by any such assign-

ment, yet by refraining from making any such assignment he is otherwise left as free to give such preferences as at common law. This may work serious mischief in certain cases, but courts are not at liberty to make or alter statutes, but are bound so far as possible to enforce them.

The statutes also provide that " all *voluntary* assignments or transfers whatever of any real estate, chattels real, goods or chattels, rights, credits, moneys, or effects, *for the benefit of or in trust for creditors,* shall be void as against the creditors of the person making the same, unless the assignee shall be a resident of this state," and the assignment is executed as therein required. Sec. 1694, R. S. It is only such "voluntary assignments or transfers" as are made to a nonresident assignee, or as are not thus executed, or as contain or give such preference, which thus come under the condemnation of the statute; but all such voluntary assignments or transfers are thereby expressly prohibited. Thus, in *Winner v. Hoyt,* 66 Wis. 227, the debtors transferred *all* their firm and individual property not exempt, by means of six chattel mortgages and five assignments, running to five different creditors, and all given at substantially the same time, in pursuance of the same agreement, for the same common purpose, and in relation to the same subject-matter, with the understanding and intent that one of such creditors, for himself and as agent or trustee for the others, should take immediate possession, which he did, and then convert the same into money and divide the same *pro rata* among such favored creditors, and with the expectation and intent on the part of the debtors that in case of any surplus the same would go to the unsecured creditors; and it was held that, under the circumstances mentioned, such eleven written instruments should be construed together as constituting but one instrument in law, and that when so construed they were in legal effect a voluntary assignment or transfer within the meaning of the statute cited.

The principles of that decision have since been expressly sanctioned by other courts of high authority. *White v. Cotzhausen*, 129 U. S. 341; *Richmond v. Mississippi Mills*, 52 Ark. 30; *Putney v. Freisleben*, 11 S. E. Rep. (S. C.), 337; *Straw v. Jenks*, 43 N. W. Rep. (Dak.), 944; *Bonns v. Carter*, 20 Neb. 566; *S. C.* 22 Neb. 495–517; *Hanford Oil Co. v. First Nat. Bank*, 126 Ill. 591. Some of these cases were under statutes which avoided the preference, merely leaving the transaction to stand as a valid assignment for the benefit of all creditors. Such statute may be preferable to ours, which under certain circumstances requires the courts to avoid a preference desired and made by a debtor in order to enforce a preference against the will of such debtor. The facts in some of these cases were much less favorable to holding the transaction to be in effect a voluntary assignment for the benefit of creditors, than in *Winner v. Hoyt, supra.*

The facts in that case were peculiar, as already indicated, and such as inevitably led to the conclusion there reached. That conclusion was so reached on the theory that a court of equity was bound to regard the substance, object, and effect of the whole transaction when taken together, rather than the mere form of the details resorted to in order to evade the condemnation of the statutes. Attempts have since been made to apply the principles of that case to some of such details when standing alone. Thus in *Hoey v. Pierron*, 67 Wis. 262, a failing debtor executed four chattel mortgages upon his stock of goods to his wife and two other persons respectively, who thereupon took possession and proceeded to sell the goods under the mortgages in the ordinary way, but it did not appear that the mortgages covered all of the debtor's property, and there was no assignment of any accounts, assets, or things in action, nor intent to defraud, nor any trust relation; and, distinguishing *Winner v. Hoyt*, it was held in effect that the transac-

tion did not constitute a voluntary assignment within the meaning of the statute cited, and was therefore valid as against attaching creditors. In *Chicago Coffin Co. v. Maxwell*, 70 Wis. 282, an attorney at law having in his hands for collection several claims against insolvent debtors, and in consideration of an extension of the time of the payment thereof, obtained from them a note for the amount of such claims, secured by a chattel mortgage upon most of their property, both running to himself, for the benefit of such creditors, but without his knowing that such debtors were then insolvent or owed other debts; and, following *Carter v. Rewey*, 62 Wis. 552, and distinguishing *Winner v. Hoyt*, it was held that the transaction did not amount to an assignment for the benefit of creditors within the meaning of the statute cited, and hence was valid. In *Menzesheimer v. Kennedy*, 75 Wis. 411, each of two creditors, knowing his debtor to be insolvent, obtained a chattel mortgage on substantially all the debtor's property not exempt to secure such debt, and in the absence of any evidence of fraud it was held that the transaction did not constitute a voluntary assignment within the meaning of the statute cited, and was therefore valid. To the same effect is *Stevens v. Breen*, 75 Wis. 595. Similar rulings have been made in other courts: *Gage v. Parry*, 69 Iowa, 605; *Fecheimer v. Robertson*, 13 S. W. Rep. (Ark.), 423.

In the absence of fraud the statute expressly authorizes security by way of chattel mortgages. Sec. 2314, R. S. The mere fact that a debtor is insolvent does not prevent his creditor from obtaining from him such security in good faith. Such chattel mortgage is little more than a mere pledge of the property mortgaged for the security of the debt. Whatever remains of such property after the payment of such debt reverts to the debtor, and becomes subject to the payment of other debts. The transaction is wholly between the parties to the mortgage, and is in no

sense for the benefit of and in trust for other creditors. A voluntary assignment for the benefit of or in trust for creditors is for a different purpose, and creates different relations. Since the right to give and obtain such chattel mortgages by way of security is expressly given by statute, the other provisions of the statutes cited, which avoid " all voluntary assignments or transfers . . . for the benefit of or in trust for creditors," when not made as therein prescribed, cannot fairly be construed as including such chattel mortgages. The mortgage in question did not cover the property of the individual members of the firm; nor does it appear that it covered all the firm property. Such being the law, there would seem to be no question upon the undisputed facts in the record but what *Hibbard, Spencer, Bartlett & Co.* had the legal right to obtain the mortgage in question in the manner stated, to secure their indebtedness against the firm. That mortgage was taken subject to the one to the Citizens' Bank, which firm was in possession of the mortgaged property at the time. There was no collusion between that bank and *Hibbard, Spencer, Bartlett & Co.*, each of which, in the matter of taking such securities, acted independently and for itself. The insurance policies were manifestly assigned to such mortgagees to keep them in force. The account due Cribben, Sexton & Co. had been sold, assigned, and transferred to *Hibbard, Spencer, Bartlett & Co.* five days before, and to all appearances thereupon became the sole property of the latter. There seems to be no valid objection to that mortgage when considered by itself.

It only remains to be considered whether, after having obtained and filed the chattel mortgage, the taking of an assignment of the ledger accounts, as further security for the same indebtedness, rendered the whole transaction, or even such assignment of the ledger accounts, a voluntary assignment or transfer for the benefit of or in trust for

creditors, within the meaning of the statutes cited. Such assignment of that account for such a purpose was very much in principle like the delivery of a chattel or a pledge to secure a debt, and certainly was not within the statute of frauds. *Bank of River Falls v. German Am. Ins. Co.* 72 Wis. 538. Whether such assignment and the mortgage are considered together, or the assignment of the account is considered separately, there are manifestly absent from the transaction several elements which were present in *Winner v. Hoyt.* Some of these have been considered by this and other courts. Thus in *Landauer v. Vietor,* 69 Wis. 441, the attachment suit was advised and instigated by the insolvent debtors, but it was said by Mr. Justice LYON, in behalf of the court: " In the present case the debtors did not dispose of all their property by consenting to the attachment suits. Neither was it all seized by virtue of such attachments, or sold upon the executions issued upon the judgments thereafter obtained. The record in the action for a dissolution of the partnership shows that there still remained a large amount of outstanding obligations due the debtors, not disposed of by them, and not interfered with by the attaching creditors, but which remained subject to be applied by the court as required by law. Neither was any trustee for the parties provided for or appointed. In these material particulars the case differs from that of *Winner v. Hoyt,* and they take it out of the rule of that case."

In *Ingram v. Osborn,* 70 Wis. 195, the insolvent debtor sold and assigned to one of his creditors a partly executed contract, being all the property he had, and, distinguishing *Winner v. Hoyt,* it was held that the transaction was not a voluntary assignment for the benefit of creditors within the meaning of the statutes. By way of quotations from standard text-writers, it was there, in effect, said: " Voluntary assignments for the benefit of creditors are transfers,

without compulsion of law, by debtors, of some or all of their property to an assignee or assignees, in trust, to apply the same, or the proceeds thereof, to the payment of some or all of their debts, and to return the surplus, if any, to the debtor. . . . There must be a trust, a trustee, creditors, and *cestui que trust*, who can compel an enforcement of the trust, in order to constitute an assignment for the benefit of or in trust for creditors."

To a similar effect are *Greene & Button Co. v. Remington*, 72 Wis. 648, 654; *Peninsular Stove Co. v. Sacket*, 74 Wis. 526; *Farwell v. Nilsson*, 24 N. E. Rep. (Ill.), 74. Mr. Burrill says: "A voluntary assignment for the benefit of creditors implies a trust, and contemplates the intervention of a trustee. Assignments directly to creditors, and not upon trust, are not voluntary assignments for the benefit of creditors. . . . Unless a trust is thereby created *by the assignor in favor of creditors*, such conveyances are not within the class of instruments known as assignments for creditors. It is not essential, however, that a trustee should be named *as such* in the instrument." Burrill, Assignm. § 3. In *Fecheimer v. Robertson*, 13 S. W. Rep. (Ark.), 423, *Winner v. Hoyt* is expressly distinguished, and it was said: "In this cause there was no agreement or arrangement, express or implied, for a trustee. The first two creditors were present by their attorney, and a delivery to him was a delivery to them. They were not accountable to any other creditor, under the terms of the deed or agreement of the parties, for any part of the money received from sales of property. When they received enough to satisfy their claims, they delivered all remaining property to the creditors named in the third deed, and they in turn represented all the indebtedness of Johnson & Bolick, and are not answerable to any one for the proceeds of sales, except to the mortgagors." In *Gage v. Parry*, 69 Iowa, 605, it was held, in effect, that where an insolvent firm executed three several chattel mort-

· gages to three creditors, respectively, and also assigned certain book accounts to a fourth creditor, all with a *bona fide* intention of securing such particular creditors, respectively, the transaction did not operate as an assignment for the benefit of creditors, and the mortgages were therefore valid.

We must hold, upon principle as well as authority, that neither the assignment of the ledger account in question, when taken by itself, nor in connection with the chattel mortgage, brings the case within the principle of *Winner v. Hoyt*, or renders the transaction a voluntary assignment or transfer for the benefit of or in trust for creditors within the meaning of the statute.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to this opinion.