ALLAN SHELDON ET AL. v. HORACE G. MANN ET AL.

*Assignment for the benefit of creditors—Preferences—Mortgages.*

1. As long as no assignment for the benefit of creditors is in *fact* made, or the transaction does not amount in law to such an assignment, an insolvent debtor is at liberty to pay or secure any of his creditors at the expense of the others.

2. An insolvent merchant was refused further credit by a dealer unless he secured existing indebtedness, which he agreed to do on condition that he first secured two other creditors upon the same property. He thereupon executed a chattel mortgage to each creditor covering all of his personal property, which mortgages were made payable on demand, so that the mortgagees could move at once if their security became impaired. The third mortgagee purchased the first mortgage, and in connection with the second mortgagee, in less than two weeks from the taking of the mortgages, took possession and commenced the sale of the mortgaged property, whereupon the mortgagor's principal creditor filed a bill charging that the transaction amounted in *legal effect* to a general assignment by the debtor for the benefit of his creditors, and praying that it be

enforced as such. The chattel mortgages covered all of the debtor's property, except a store building and dwelling-house combined, worth about $1,800, and in which he claimed a homestead exemption, and which was incumbered for $275, and a rink building, of the value of about $500, which was mortgaged for $255. And it is held that the three mortgages, being given to secure good-faith indebtedness, and not purporting to cover nor in fact covering all of the debtor's property, cannot be tortured by any legal construction of the assignment statute into an assignment for the benefit of creditors, and thereby be declared void for unlawful preferences.

Appeal from Genesee. (Newton, J.) Argued February 24, 1891. Decided April 17, 1891.

Bill to declare certain chattel mortgages to be in fact an assignment for the benefit of creditors with preferences, and to enforce the trust claimed to have been created thereby. Defendants Berdan & Co. and Secor, Berdan & Co. appeal. Decree reversed and bill dismissed. The facts are stated in the opinion

*Durand & Carton,* for complainants.

*Thomas & Hiett,* for appellants.

[The points of counsel and the authorities are fully stated and discussed in the opinion.—REPORTER.]

MORSE, J. The defendant Horace G. Mann resides in Mount Morris, a small village in Genesee county, Mich., and was engaged in 1890 in a general country store business. He had been in such business several years. May 22, 1890, he went to Toledo, Ohio, and while there, and on that day, executed three chattel mortgages upon all his stock in trade and store fixtures and notes and accounts,—one for $740.33 to the defendant Orson J. Knapp, a farmer living near Mount Morris, to whom he was indebted in that amount; one to the defendants Secor, Berdan & Co., $4,083.79; and one to Berdan &

Co., for $2,792.17; in all amounting to $7,616.29, and taking preference in the order named. The giving of these mortgages, as shown by the testimony of Edwin Jackson, a member of the firm of Berdan & Co., was occasioned by the application of Mann to him for further credit in the purchase of goods. Jackson would not give him such credit unless he would secure the firm by chattel mortgage upon his stock in trade for what he then owed them. Mann would not secure them unless he at the same time gave a first mortgage to Knapp, and a second mortgage to Secor, Berdan & Co., leaving the mortgage to Berdan & Co. to stand as third. Thereupon three mortgages were executed, payable on demand, as above stated, and all filed of record on the next day, May 23, 1890. At the time these mortgages were made, Mann had no other property except a house and store combined, which was his homestead, shown to be worth about $1,800, and a rink building of the value of about $500. There was a mortgage upon the store of $275, and upon the rink of $255.

After the three mortgages were filed, Mann gave other mortgages as follows, upon the goods in the store: Citizens' National Bank, May 23, 1890, $400, filed May 23; Watson & Co., May 23, 1890, $97.50, filed May 23; Flint Cigar Company, May 23, 1890, $184.10, filed May 23; Partridge Bros., May 23, 1890, $37, filed May 23; Toledo Spice Company, May 28, 1890, $58.60, filed June 3; Childs & Dunlap, June 2, 1890, $194.64, filed June 3; Wright & Co., June 2, 1890, $300.10, filed June 3; Banner Tobacco Company, June 2, 1890, $87.50, filed June 3; Wells Stone Mercantile Co., June 2, 1890, $307, filed June 3; Trumbull Bros., June 2, 1890, $66, filed June 3; Lortz Paper Company, June 2, 1890, $215.25, filed June 3; Stanton, Sampson & Co., June 2, 1890, $127, filed June

3; and also a mortgage upon his store property to his brother, Nathan W. Mann, for $1,000, dated May 23, 1890, and one for $255.97 upon the rink property, May 29, 1890, to a creditor at Toledo, Ohio.

Berdan & Co. purchased the Knapp mortgage, and, in connection with Secor, Berdan & Co., in less than two weeks from the taking of their mortgages, took possession of the property, and commenced selling under the same. The complainants filed this bill, alleging that Mann was insolvent at the time he gave these mortgages, and that the defendants Secor, Berdan & Co. and Berdan & Co. knew it; that the mortgages were given and received with the intent and design to evade and violate the statutes of this State in reference to assignments, and to create an unlawful preference in their favor, and to deprive the other creditors—among whom were the complainants, in the sum of over $10,000—of their right to a fair, equal, and equitable distribution of the assets, so that they might share ratably therein. They further charged the fact in said bill that all the mortgages so given as hereinbefore stated were in legal effect one instrument, designed to evade the provisions of the assignment laws of this State, and an assignment with preferences; that such preferences were void; and that such assignment should be enforced for the benefit of all the creditors. The bill prayed for an injunction, and that a receiver be appointed to take charge of the property, and hold the same subject to the order of the court. A receiver was appointed, and under stipulation of all the parties the stock was sold by such receiver at public sale for $3,960. Before the receiver took possession, the defendants had sold under their mortgages certain of the goods, as they claimed, for all they could get for them at a fair sale. The whole sum realized from the sales under the

mortgages and by the receiver amounted to $5,416.66, a less sum than the debts secured by the first three mortgages.

The defendants Mann, Berdan & Co., and Secor, Berdan & Co., answered, denying that Mann was insolvent at the time he made these mortgages, to the knowledge of Berdan & Co. or Secor, Berdan & Co., and averring that they took said mortgages in the usual way of security, without any intent or design whatever to evade the assignment laws of this State, and alleging that they did no more than they had the legal right to do in the collection and securing of their just claims against said Mann under the laws of this State.

Testimony was taken upon this issue, and the circuit judge, Hon. William Newton, found that the defendant Mann, knowing that he was insolvent, made and delivered the first three mortgages on his property for a much larger amount than his total assets amounted to, and that Berdan & Co. and Secor, Berdan & Co. received the same with full knowledge and understanding on their part of his insolvency; that Mann gave all the other mortgages with full knowledge of his insolvency; that Mann, by the making of these mortgages, divested himself of all the property of which he was possessed, subject to levy and sale on execution, as completely and effectually as if he had made a voluntary assignment for the benefit of creditors, and that the same amounted to such an assignment; that the mortgages executed to Berdan & Co. and to Secor, Berdan & Co. were made by Mann to them and received by them with the intention of evading the statute of the State of Michigan relative to assignments for the benefit of creditors, and that such mortgages constitute a fraud upon complainants, and are null and void, being in contravention of said statute forbidding preferences to creditors. The mortgages were all decreed void,

and the proceeds of the sale of the goods were ordered to be distributed by the receiver as in the case of a voluntary assignment.

The defendants Berdan & Co. and Secor, Berdan & Co. appeal.

It is evident from the testimony in this case that the defendant Horace G. Mann must have known that he was insolvent at the time he made these first three mortgages, but it is not so clear that the defendants knew it. Mann's property, all told, outside of his goods and accounts, and not covered by these mortgages, did not exceed in value $1,800, of which $1,500 was a homestead exemption. The property embraced in these three mortgages was inventoried by the mortgagees when they took possession at $10,000 or thereabouts, but, even at this figure, Mann was hopelessly insolvent, owing over $20,000. Mann put a higher figure upon his store and rink property than it was worth, but at his own valuation his assets did not equal his liabilities.

But there is no direct evidence to show that the defendants knew him to be insolvent. In 1889 he made a statement to Berdan & Co., showing his assets to be $27,574.83, and his liabilities, outside of his debts to Berdan & Co. and Secor, Berdan & Co., to be $13,070.55. He rated his real estate at $5,750, and his accounts at $2,280; stock, per inventory, $16,805.33. In 1890 his statement showed assests, $26,434.38; liabilities, except to the two firms above mentioned, $11,402.04; real estate, same as before, $5,750; accounts and notes, $2,170; stock, per inventory, $15,784.38; cash on hand and in bank, $535; household goods and rink fixtures, $1,200. There is no evidence that Knapp knew Mann was insolvent, or that the mortgage had been given to him until after it was filed. Secor, Berdan & Co., according to the testimony of Secor, did not demand a mortgage of Mann, but he insisted upon

giving them one in preference to Berdan & Co., when the latter insisted upon security. It appears also that the rink cost over $2,000, and the store something over $3,000, and there was testimony of one witness that he thought the store building was worth at least $3,000.

The conclusion that Berdan & Co. and Secor, Berdan & Co. conspired with Mann to make these mortgages with intent to evade the assignment law seems to have been founded upon the mortgages being made payable on demand, the insolvency of Mann, and the early taking possession by the mortgagees of the property. It would, however, appear quite clearly from the action of Berdan & Co., that they supposed there was a very much larger amount of property belonging to Mann than there was found to be his under a forced sale, as they were willing that both the Knapp and the Secor, Berdan & Co. mortgage should take precedence of their own, although they were the only persons insisting upon security. It is also clearly shown that they had nothing to do with any of the subsequent mortgages except the one upon the rink and the one to the Toledo Spice Company.

The subsequent mortgages cannot, in my opinion, be considered as a part of the transaction of the giving of the first three mortgages. They were given to and procurred by different persons, creditors of Mann, who, upon finding the first mortgages on file, attempted each for himself to get such security as they could for their claims. These mortgages have no connection with or relation to the first three mortgages in any legal sense, so as to make them a part of their transaction, or, in contemplation of law, one instrument with them. If an assignment for the benefit of creditors with unlawful preferences is found in this case, it must grow out of the making and receiving of these first three mortgages and the conduct of Mann, Berdan & Co., and Secor, Berdan & Co. The

acts of the other defendants, and the execution of the other mortgages, cannot be considered in determining whether or not these first mortgages are void. The taking of these latter mortgages was nothing more than would naturally in any case follow the putting on file of a large mortgage upon any stock of goods when there were many unsecured creditors. We find, then, that these three mortgages did not cover all the property of the debtor, and that he afterwards gave a $1,000 mortgage upon his store and $255.97 upon the rink to other creditors. It may well be presumed, and a natural inference, that Mann supposed his home and store to be worth more than others would value it at, and his rink and its fixtures at something near what it cost him; and there is nothing in this record to show that the defendants who appeal had any reason to believe that his real estate was not worth what he inventoried it at in his statements from year to year to them.

The question, then, arises, did these defendants do any more than they had a perfect right to do under the common law and the statutes of this State? Let it be granted that Mann was insolvent and knew that he was, and that Berdan & Co. and Secor, Berdan & Co. knew that he was in such a condition financially that the former firm would sell him no more goods unless he secured his pre-existing indebtedness, and that the latter firm were willing, if Berdan & Co. had security, to take a prior mortgage lien, as Mann insisted they should; and that they made the debt in both mortgages payable on demand, so they could move at once if their security became impaired; for this is as far as the evidence goes. Anything further is inference or mere conjecture. Under these circumstances, were these mortgages void? Certainly not, under the common law. The creditor has a right to secure and to collect his claim even if he knows that his

debtor is insolvent, and that by getting his claim paid he deprives other creditors of the opportunity to secure or collect their debts. At common law a general assignment for the benefit of creditors could be made with preferences. Nor was ·the debtor compelled to make an assignment. He could dispose of his property as he saw fit in the payment of his debts if it was all applied to such purpose; and, whether it was all so applied or not, whatever portion of it was applied to the payment of a *bona fide* debt could not be touched or disturbed by other creditors. The common law put a premium upon the vigilance of the creditor, and there are not wanting those who doubt to-day. the equity as well as the wisdom of bankruptcy laws. And under the law of this State the debtor has the right to prefer one creditor over another by paying his debt in full or in part. This right is not affected by the debtor's insolvency, nor by the creditor's knowledge of such insolvency, nor by the fact that others may lose the entire amount of their debts credited upon the faith of the debtor's ownership of the property. As long as no assignment for the benefit of creditors is made, or the transaction does not amount in law to such an assignment, the debtor is at liberty to pay or secure any of his creditors at the expense of the others.

It will be found that our statutes do not prohibit preferences unless an assignment "commonly called 'common-law assignment'" is made. How. Stat. § 8739; *Rollins v. Van Baalen*, 56 Mich. 614, 615. And there is no law compelling a debtor to make an assignment. As I understand the statute, if he makes such an assignment he must do it in a certain way, and make no preferences; but if he does not see fit to make an assignment for the benefit of his creditors, he can dispose of his property as he sees fit in the payment of his *bona fide* debts. In other

85 MICH—18.

words, if A. has but $1,000 in property, and he owes B. $1,000, C. $500, and D. $300, he may, if he choose, make an assignment for the benefit of his creditors, and all must then share *pro rata* in the property; but, not doing this he may use all his property lawfully to secure or pay the debt of B., or he may divide it up, and apply it as he may choose in the part payment of the three debts, and no one can interfere with him, unless he does it in such a way that the law will treat it as an assignment for the benefit of creditors in fact. But if A., under these circumstances, should give a mortgage to C. for $500, and another to B. for $1,000, to secure their claims, I do not think that D., although his claim be entirely lost by the giving of such mortgages, could complain. It is said that a debtor and a creditor or any number of creditors cannot combine to evade the law as to assignments. But, as before shown, the law does not compel an assignment. It is at the debtor's option to make one or not, as he sees fit. If he prefers to have his property taken to pay his debts under attachment liens or execution levies, instead of making an assignment, I know of no law that forbids it; and if he desires to secure one creditor by mortgage, and, having done so, keeps on mortgaging his property to his creditors as fast as they reach him, until all of it is encumbered for more than it is worth, he has, I think, a perfect right to do so; and the diligent creditor, who first obtained security, is not obliged to divide with the laggard, who was left behind in the race because of his own neglect to press his claim. If this right is to be hampered or prevented it must be by future legislation, and not by the courts. In 1883 the Legislature passed a law in this direction, but it was declared inoperative and void by this Court, and after-

wards repealed. Act No. 193, Laws of 1883; *Risser v. Hoyt,* 53 Mich. 185; Act No. 58, Laws of 1885.

The right, under the common law, of the debtor to make such preferences as he may choose in the payment of his debts, and the right of the diligent creditor to hold the advantage he has gained by his diligence, have been often recognized in this State. *Risser v. Hoyt,* 53 Mich. 210 (opinion by CAMPBELL, J.); *Jordan v. White,* 38 Id. 253; *Hill v. Bowman,* 35 Id. 192; *State Bank v. Whittle,* 48 Id. 1; *Neumann v. Mining Co.,* 57 Id. 97; *Root v. Potter,* 59 Id. 506, 507; *Sweetzer v. Higby,* 63 Id. 22, and cases cited; *Field v. Fisher,* 65 Id. 611; *Dwight v. Lumber Co.,* 67 Id. 512, 513; *Burnham v. Haskins,* 79 Id. 35. And it would seem to be also well settled in this State that, if a debtor does not choose to make an assignment, he is not governed by the statute in relation thereto in the matter of preferences of his creditors. In *Rollins v. Van Baalen,* 56 Mich. 614, CAMPBELL, J., says:

" The statute of 1879, under which the claim is set up, is 'An act to provide for the regulation and enforcement of assignments for the benefit of creditors.' * * * It provides that all such assignments, 'commonly called common-law assignments,' shall be void unless made without preferences, and without certain formalities and concurrent action, and that they shall be so administered. *All of the provisions relate to instruments which purport to be such assignments made to some assignee named.* The statute is very clear on this subject. * * * * *

" The statute cannot treat these multifarious dealings in which interests are secured or transferred severally as one joint assignment, or as an assignment at all. * * * It should be construed as it reads, as applying only to what purport to be common-law assignments. If proceedings not in that form are claimed to be fraudulent as to creditors, they must be reached in some other way, and shown to be against some other policy. *The law does not avoid honest transfers or securities which are not general assignments.*"

Again, in *Neumann v. Mining Co.*, 57 Mich. 106, Mr. Justice CHAMPLIN, speaking for the Court, says:

" The arrangement doubtless serves to prefer the Wertins over the other creditors of Dollinger, but such preferences are lawful at the common law, and in this State are only forbidden when the debtor makes a common law assignment for the benefit of his creditors. That statute, being in derogation of the common law, *will not be extended to embrace cases not within its terms,* and, in the absence of an assignment upon which to operate, has no effect."

In *Root v. Potter*, 59 Mich. 506, 507, Chief Justice CAMPBELL says:

" There is nothing in the assignment law which undertakes to avoid dealings previous to the assignment, whether near or remote in point of time, which were in no way connected with it in the intention of the parties. * * * The statute only makes preferences void which are made by the assignment itself, and this, by the largest possible construction, cannot go beyond such acts as are done in such a time and manner as to be parts of the same transaction, and within the same disposition, whereby the debtor's entire estate is applied to the payment of all his debts."

Again, in *Dwight v. Lumber Co.*, 67 Mich., at pages 512, 513, this same doctrine is confirmed, and Mr. Justice CHAMPLIN goes further, and says:

" Preferences are void only in common-law assignments because forbidden by statute. The statute inhibits the debtor from preferring a creditor in the instrument. If it is done by another and separate instrument contemporaneous with the assignment, it can only be held void as an evasion of the law by the parties to the instrument. * * * The total absence of enactments necessary in order to effectuate the intention of the law to secure an equal distribution of all the debtor's property among all of his creditors, and to recover preferences made with an intent to evade its provisions, *renders the law but little better than a dead letter upon the statute book.*"

In the case at bar no assignment was made or intended to be made; nor is it at all certain that the mortgages were made even with an intent to avoid the assignment statute. Fraud must be .proven, and must not be inferred from slight circumstances, and I am inclined to believe that Berdan & Co. and Secor, Berdan & Co. obtained their security honestly and in the usual methods of business, without any thought of the assignment law. But whether they did so or not,—whatever their motive or intent may have been,—so long as the securities. covered no more than the amount of their just and honest claims against Mann, they have a right to the full benefit of such securities, unless the giving of these three mortgages upon the same day · to separate parties can be declared in law and in fact to be a common-law assignment of all the debtor's property for the benefit of all his creditors. It plainly· cannot be so declared or construed. As is well said under a similar statute by the supreme court of Wisconsin in *Cribb v. Hibbard,* 77 Wis. 199 (46 N. W. Rep. 168):

"While the debtor is precluded from giving any such preference in or by any such assignment, yet by refraining from making any such assignment he is otherwise left as free to give such preferences as at common law. This may work serious mischief in certain cases, but courts are not at liberty to make or alter statutes, but are bound as far as possible to enforce them."

Many cases are there cited, similar to the one before us, in which the giving of mortgages to separate parties in security of their claims covering nearly all the property of the debtor is held not to be a voluntary assignment for the benefit of creditors.

The case of *Kendall v. Bishop,* 76 Mich. 634, is relied upon by complainants to support the finding of the circuit judge that the execution and delivery of these three mortgages was an assignment for the benefit of creditors,

and must be treated as such. But that case differs very essentially from this one. It was there held that the direct effect of the instrument as made was to put the entire assets into the hands of a trustee for sale and distribution; and that the only distinction between it and a common-law assignment, if there was any, was that the trustee was given powers which would be unlawful as against creditors by the common law. It was further said that—

"An assignment of all one's assets to an assignee for the benefit of creditors is within all the definitions of a general assignment."

All the property of the corporation, the Sherwood Manufacturing Company, was by an instrument purporting to be a mortgage placed in the hands of Kendall, conveyed to him in trust for certain creditors, and authorizing him to do a great many things not usually found in mortgages. This Court said that it began as a mortgage, but ended as a general assignment, and must be treated as such, and was void for two reasons:

1. Want of power or authority to make it.
2. It did not provide for all the creditors, but preferred some, and gave the surplus to the debtor.

See, also, *Atkinson v. Weidner*, 79 Mich. 575, which was a similar case.

"A voluntary assignment for the benefit of creditors implies a trust, and contemplates the intervention of a trustee. Assignments directly to creditors, and not upon trust, are not voluntary assignments for the benefit of creditors. * * * Unless a trust is thereby created by the assignor in favor of creditors, such conveyances are not within the class of instruments known as 'assignments for creditors.'" Burrill, Assignm. § 3.

In this case there is no express or implied agreement or arrangement for a trustee, and no trust is created in favor of creditors. It is simply the taking of security by

mortgage for a pre-existing debt in the ordinary way, and there is nothing uncommon in the form of the mortgages except that the debt is made payable on demand, so that the mortgage may be foreclosed at any time after demand at the option of the mortgagee.

Such a mortgage, or three of them, executed at the same time to separate parties, for the security of good-faith indebtedness, cannot, in my opinion, be tortured by any legal construction of the assignment statute into an assignment for the benefit of creditors, and thereby be declared void for unlawful preferences. Neither one of these mortgages purports to convey all the property of the debtor, and in fact all of them together did not do so, and were not intended to dispose of all his property. If it would be better policy to debar a debtor from making any preferences among his creditors when he knows he is insolvent or when he actually is so, still it cannot be done in this State without further legislation. If the debtor, as our laws now are, does not wish to make an assignment, he cannot be forced into one; and he has the privilege of securing and paying such creditors as he sees fit so long as his property lasts, if he avoids disposing of all of his property in such a manner as to create a trust for the benefit of his creditors which in law will be considered an assignment, as in the case *Kendall v. Bishop, supra.*

The decree of the court below is wrong, and should be reversed, and complainants' bill dismissed, with costs of both courts.

The other Justices concurred.