FRED W. PETTIBONE v. ANDY BYRNE.

*Fraudulent conveyances—Mortgage—Assignment for benefit of creditors.*

The only question in this case is whether, as against the creditors of the attachment debtor, the arrangements under which the plaintiff held the attached property are valid, which question is answered in the negative, for the reason that the instrument by which the property was transferred is not merely a mortgage, but conveys the property absolutely to the trustee, and places it beyond the reach of creditors; and what is said by Mr. Justice CAMPBELL in *Kendall v. Bishop*, 76 Mich. 634, 639, is held to be equally applicable to said instrument.

| | |
|---|---|
| 97 | 85 |
| 112 | 391 |
| 97 | 85 |
| f119 | 521 |
| 97 | 85 |
| 125 | 57 |
| 125 | 58 |
| 125 | 549 |
| 97 | 85 |
| h152 | 333 |
| 152 | 337 |
| j152 | 343 |

Error to Gogebic. (Haire, J.) Argued June 23, 1893. Decided October 2, 1893.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*Button & Norris,* for appellant.

*Sawyer & Waite,* for plaintiff.

McGRATH, J. Defendant, as sheriff, on April 25, 1891, attached certain personal property of the Watersmeet Lumber Company, and plaintiff replevied the property. The only question in the case is whether, as against creditors of the attachment debtor, the arrangements under which plaintiff held the property were valid. The instrument under which plaintiff claims the property, omitting the description of the property, reads as follows:

" This indenture, made this 13th day of April, in the year of our Lord one thousand eight hundred and ninety-one, between the Watersmeet Lumber Company, a corporation organized under the laws of the State of Michigan, doing business at Watersmeet, in the county of Gogebic and State of Michigan, party of the first part, and F. W. Pettibone, of the same place, as trustee for certain creditors hereinafter referred to, party of the second part, *witnesseth,* that—

"*Whereas,* the said Watersmeet Lumber Company is indebted unto the said creditors, respectively, in divers amounts, aggregating approximately the sum of one hundred and sixty thousand dollars, but certain of which debts cannot be definitely stated, and are possibly large enough to increase said indebtedness a few thousand dollars; and—

"*Whereas,* the said Watersmeet Lumber Company has this day executed to the said F. W. Pettibone, as trustee, its bond in the sum one hundred and seventy-five thousand (175,000) dollars, conditioned for the payment of all said debts on or before two years from the date hereof, with interest as is in said bond provided, all of which said debts are to be equally secured hereby, saving and excepting the debt to Julius Ruprecht, in said bond mentioned, for the sum of approximately six hundred (600) dollars, which is a trust fund, and which is hereby especially declared to be preferred

and first paid out of the proceeds of the property herein described applicable to the payment of the said debts; and—

"*Whereas*, the said party of the first part has, by resolution of its directors, decided to secure the said indebtedness covered by said bond in manner as is in said bond provided, and by execution of this instrument.

. "Now, the said party of the first part, in consideration of the premises, and of the sum of one (1.00) dollar, to it in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, remised, released, enfeoffed, and confirmed, and by these presents does grant, bargain, sell, remise, release, enfeoff, and confirm, unto the said party of the second part, as such trustee as aforesaid, and to his successors in said trust and assigns, all those certain pieces or parcels of land situate and being in the counties of Gogebic and Ontonagon, in the State of Michigan, and all the goods, chattels, and personal property hereinafter mentioned, and described as follows, to wit:

[Here follow descriptions.]

· "Together with the tenements, hereditaments, and appurtenances unto said lands now or hereafter belonging or in any wise appertaining or thereupon situated; to have and to hold the said above-described lands, premises, and goods and chattels unto the said party of the second part, as trustee as aforesaid, and to his successors in said trust and assigns, forever, but for the following purposes and upon the following express trust, that is to say: That in case the said party of the first part shall fail to pay the principal, or any part thereof, or any interest upon any of the claims in said bond mentioned or referred to, or intended to be secured hereby, at the time and place in said bond provided for, then and in such case, or if the trustee, his successors in trust or assigns, shall for any reason deem said claims insecure, he, the said trustee, his successors in trust or·assigns, may enter into and take possession of all and singular the premises and property hereby conveyed, at any time hereafter, and with full authority, as the·attorney in fact or agent of said first party, by himself or his. agent duly constituted, have, use, and employ the said property,. and all and every thereof, and carry on the business as carried on by the said first party, including both store and lumber business,. and convert the logs and timber into lumber, and make sale thereof,. and carry on the business of said store, increasing and replacing· the stock therein as required for the purpose thereof, and to make· all needful repairs upon said buildings and the said mill, and renew and replace the machinery thereof as, may be required, using the proceeds of the mercantile and lumber business for the purpose of so carrying on the same and paying the total expense

thereof, including labor, and to sell, exchange, or buy the needed horses, oxen, and other stock, and all tools and utensils necessary for the proper carrying on of such business, and to cut and remove all the timber proper to be cut and removed from any and all of the lands above referred to which said first party might cut and remove, and to manufacture the same into lumber, and to buy other logs, timber, and lumber when, in the judgment of such trustee, it is for the interest of said first party and said creditors so to do, for the purpose of manufacturing the same into lumber, and the same when so purchased to be included under the provisions hereof, and to run said mill as such trustee, to saw other logs and timber for hire, in case he shall choose so to do, and in every other particular carry on the said business in such manner as he might carry the same on were it his own, using good business tact and judgment in connection therewith, and the handling of all of said business thus including the sale of products and the collection of the selling price thereof, and all accounts and bills receivable; which said business may be carried on by said trustee, as aforesaid, until the said claims shall become due under the bond aforesaid, or longer, if necessary so to be done, in the judgment of said trustee, for the interest of the parties hereto. And, in so carrying on the said business, the trustee is hereby authorized to apply the proceeds of said business to the canceling of such of the indebtedness of said company as may, in his judgment, be necessary to be canceled for the purpose of protecting the interest of the parties in the lands or timber held by said first party under contracts for purchase, which might be in danger of forfeiture should the same not be paid for. And during the time said trustee shall carry on such business, as aforesaid, he may, out of the proceeds of such business, effect and keep in force insurance on such of the property covered hereby and used by him in such business as may be just and proper for the protection of all the parties hereto, and may also, out of the proceeds of such business, pay and discharge all taxes that may be due or come due on any of such property. And out of such proceeds of the business aforesaid he shall first pay and discharge all the expenses of carrying on the same, including reasonable salaries of all employés, and reasonable attorneys', counselors', and retainer fees, and the fees for services in the preparation and creation of this trust, and a reasonable compensation to the trustee aforesaid; and the net surplus, after paying such expenditures and all needful expenditures in the carrying on of said business, shall be applied upon the claims covered by said bond as fast as the same can be spared from the said business, in manner following, to wit: *First*, the actual amount of the claim due to Julius Ruprecht, as mentioned in said bond at about six hundred (600) dollars, shall be paid and

discharged, and thereafter the other debts and expenses shall be paid and discharged *pro rata;* provided, only, that the net proceeds of logs and timber which have been otherwise incumbered prior to the date hereof, such as the proceeds of the logs and timber mortgaged to the First National Bank of Menominee, Mich., to secure the debt to them in said bond mentioned, and the proceeds of certain property mortgaged to the Minnesota Lumber Company to secure the debt aforesaid, shall be first applied to the satisfaction of the claims so first secured.

"And in case said claims shall not all be satisfied and paid in full, as in said bond provided, then and in such case it shall and may be lawful for the said party of the second part, trustee as aforesaid, his successors in said trust or assigns, and the said party of the first part does hereby empower and authorize the said party of the second part, trustee as aforesaid, his successors in trust and assigns, to grant, bargain, sell, release, and convey said premises. with appurtenances, at public auction or vendue, and on such sale to make and execute to the purchaser or purchasers, his, her, or their heirs and assigns, forever, good, ample, and sufficient deed or deeds of conveyance in law, pursuant to the statute in such case made and provided, and out of the proceeds of such sale to retain the principal and interest remaining due on all said debts, to be paid by said trustee to the said creditors in manner above provided for paying the surplus from the carrying on of the said business, and the cost and charges of such vendue and sale, and also attorney's fee hereinafter provided, rendering the surplus moneys, if any there should be, to the said first party, its successors and assigns,

"And it is further expressly agreed that as often as any proceeding is taken to foreclose this mortgage, either by virtue of the above power of sale, in chancery, or in any other manner provided by law, said first party shall pay said second party one hundred dollars as a reasonable solicitor's or attorney's fee therefor, in addition to all other legal costs.

"And the said first party does hereby especially authorize and empower the said second party to grant, bargain, sell, assign, transfer, and convey any and all said property, real and personal, at private sale, when such sale shall be manifestly for the interest of all parties connected herewith, either before or after the said bond shall become due; it being hereby intended to especially authorize the said trustee to sell all the rights which said first party has of, in, and to the timber which said first party has purchased under the contracts, the rights to which may be forfeited in case payments are not made as in said contracts provided, and also to sell any and all other lands, timber, or interest in lands which may be incumbered in any way, so that the rights of said first party are in danger of becoming forfeited,

without being required to give notice or take any proceedings at law; and in case of such sale said second party may execute deed in the name of said first party, as fully to all intents and purposes as said first party itself might do.

"It is hereby expressly provided that the said trustee shall keep an accurate and just account of all his proceedings in said trust, and that the same shall be open from time to time to the inspection of the officers and directors of the said first party, and that in executing said trust he shall, in every possible way, further the interests of the parties hereto by doing all in his power to realize the utmost possible sum from the property covered hereby, for the purpose of paying the claims secured, and saving all surplus that may be possible to be returned to said first party.

"Executed by the said Watersmeet Lumber Company. Witness the hands of its president and secretary, and the corporate seal of said company, the day and year first above written.

"WATERSMEET LUMBER COMPANY,

"By JAMES A. CROZIER, President.

"RUDOLPH H. WENDT, Secretary.

(Corporate seal.)

"Sealed and delivered
  in presence of
"JULIUS RUPRECHT.
"A. L. SAWYER.

"STATE OF MICHIGAN, ⎱ ss.
  County of Gogebic. ⎰

"On this 13th day of April, in the year one thousand eight hundred and ninety-one, before me, the subscriber, a notary public for Menominee county, Mich., personally appeared James A. Crozier, president, and Rudolph H. Wendt, secretary, of the Watersmeet Lumber Company, to me known to be, respectively, the president and secretary, and acknowledge that as such president and secretary they executed the foregoing instrument for and in behalf of said Watersmeet Lumber Company, and affixed its corporate seal thereto, as its act and deed, for the uses and purposes therein expressed.

"In witness whereof I have hereunto set my hand this 13th day of April, 1891.

"ALVAH L. SAWYER,

"Notary Public for Menominee Co.,

Acting in Gogebic Co., Mich."

Four creditors, representing about $97,000, two of whom, representing about $59,000, had been amply secured by mortgage, were present at the time of the execution of said instrument, and consented to the transfer. At the

time of the attachment, creditors representing "between 80 and 90 per cent. of the indebtedness" had accepted the benefits of the trust. The plaintiff testified as follows:

"There was a house and lot in Watersmeet, on which something had been paid, and left a balance in the neighborhood of $300, that was not included in the mortgage, and also some hard-wood land, and some little pine lands,— about $1,000 worth of pine stumpage, altogether. I think there may also have been a cow or two, something of that kind, and there was a bull, that was not included in the mortgage. There was about 200,000 or 250,000 feet of pine which was not included. It has been sawed into lumber by me. I spoke to Mr. Crozier about it, and I didn't buy it of him, but I just took it."

The president of the company testified that the value of the property not included in the conveyance was between $3,000 and $4,000. The total indebtedness is stated in the instrument at $160,000. So that, at the time this suit was commenced, creditors representing from $16,000 to $32,000 of the indebtedness had not consented to the trust, and there was property valued at between $3,000 and $4,000 belonging to the company that was not included in the transfer. The mortgage was executed April 13, 1891, and plaintiff took immediate possession. He says:

"I did not consider myself insecure. I was present when the mortgage was executed. I accepted the trust, and took possession as fast as I could, partially on the same day the mortgage was executed."

At the trial, had in May, 1892, it appeared that he had been conducting the business since taking charge, had bought 1,200,000 feet of timber, purchased horses, replenished the stock in the company store, and borrowed $60,000 or $65,000 from one of the creditors, and had given a chattel mortgage to secure its repayment, had borrowed money from time to time from the bank, but had paid nothing to "creditors, outside of the Minnesota Lumber

Co., the Diamond Match Co., and the Bank of Menominee, except Mr. Ruprecht [the preferred creditor]."

The instrument in question, and the action thereunder, which seems to have been contemplated, operated as a fraud upon the creditors who had not accepted the benefits of the trust. It is not a mortgage merely, for the reason that the property is conveyed absolutely to the trustee, and is beyond the reach of the creditors. What is said by Mr. Justice CAMPBELL in *Kendall v. Bishop*, 76 Mich. 634, 639, is equally true of this instrument:

"By this document the trustee is expressly empowered to continue the business if he chooses, to go on and complete the manufacture of the stock, and to buy further material and goods to help on the profitable winding up of the business, and to dispose of everything as soon as reasonably practicable. And by this grant of powers it is evident that the company, having put everything in his hands, could not possibly do anything to pay debts or redeem the mortgage, while the intermingling of new and old business would deprive execution creditors of any means of getting a sale of the residue belonging to the mortgagor, if, in fact, there should be, as the law and the instrument both assume there might be, one.

"In other words, Mr. Kendall not only took an interest by way of security for debts which by law any execution creditor would have a right to redeem, but he also took title to the surplus, with power to manage and dispose; and a trust was created for the company which would not be subject to execution, as a mere equity in the proceeds, and not an ownership in the property.

"By section 6184 of Howell's Statutes, all transfers made in trust for the use of the grantor are void as against creditors, and one reason of this is because the property is thus put beyond reach of process."

There is no conflict between that case and the cases of *Sheldon v. Mann*, 85 Mich. 265, and *Warner v. Littlefield*, 89 Id. 329. The distinction between the instruments is clearly pointed out in both of the last-named cases. In *Warner v. Littlefield*, Chief Justice CHAMPLIN says:

" If the mortgage is to a trustee for the benefit of creditors, * * * it is as valid as if made to the mortgagees. The question in such cases is this: Is the title of the property conveyed to the trustee so that it is beyond the reach of the creditors of the mortgagor?"

The judgment must therefore be reversed, and a new trial had.

The other Justices concurred.