THE NATIONAL BANK OF OSHKOSH V. THE FIRST NATIONAL BANK OF IRONWOOD ET AL.

*Assignment for benefit of creditors—Preferences—Chattel mortgage—Replevin—Judgment—Res judicata.*

1. 3 How. Stat. § 8739, which provides that all assignments, commonly called common-law assignments for the benefit of creditors, shall be void unless the same shall be without preferences as between such creditors, only applies when the instrument can fairly and legitimately be said to possess all of the essential elements of such an assignment; and courts should not permit such essentials to be dispensed with, or substitute real or supposed equities for them, or unduly construe instruments intended for securities to be assignments.[1]

| | |
|---|---|
| 100 | 485 |
| 106 | 198 |
| 100 | 485 |
| 113 | 103 |
| 100 | 485 |
| 115 | 463 |
| 115 | 526 |
| 100 | 485 |
| 117 | 261 |
| 100 | 485 |
| 128 | 197 |
| 100 | 485 |
| 144 | ²597 |
| 100 | 485 |
| p149 | 207 |
| 100 | 485 |
| 152 | ¹335 |
| 152 | 336 |

[1] ASSIGNMENTS WITH PREFERENCES.

For cases bearing upon the construction of 3 How. Stat. § 8739, which voids assignments for the benefit of creditors if made with preferences, see:

*General Rules Applicable to the Subject.*

1. *Fuller v. Hasbrouck*, 46 Mich. 78, 81, holding that the general intent of the statute is to secure the equal distribution of the property of insolvents among all their creditors, and to this end it prohibits the giving of preferences, and, if they are fraudulently attempted, the intervention of equity to prevent it is authorized.

2. *Rollins v. Van Baalen*, 56 Mich. 610, holding that the statute relates to instruments which purport to be common-law assignments to some designated assignee, and not to multifarious dealings in which interests are secured or transferred severally, and which are claimed as fraudulent as to creditors.

3. *Butler v. Wendell*, 57 Mich. 62, holding that the statute has no extra-territorial force, and that a common-law assignment with preferences, made in New York by a resident of that state to a Michigan assignee, and valid in New York, is not made invalid for Michigan by the statute.

4. *Neumann v. Mining Co.*, 57 Mich. 97, 106, holding that preferences among creditors are lawful at the common law, and in this State are only forbidden when the debtor makes a common-law assignment for the benefit of his creditors; that the statute which prohibits them, being in derogation of the common law, will not be extended to embrace cases not within its terms, and, in the absence of an assignment upon which to operate, has no effect.

5. *Root v. Potter*, 59 Mich. 498, holding that the statute only makes preferences void which are made by the assignment itself, and this, by the largest possible construction, cannot go beyond such acts as are done in such a time and manner as to be parts of the same transac-

2. It is lawful for a creditor, who has knowledge of the intention of the debtor to make an assignment for the benefit of creditors, to attempt to secure his debt before the assignment is made; and the further knowledge on his part that such action will postpone, or perhaps cut off, the claims of other creditors, will not make a mortgage taken as such security fraudulent, even though the creditor also knows that the debtor consents to give it because of an expectation on his part that it will be a shield to him, so long as there is no collusive assistance rendered by the creditor with that object in view.

3. It is not uncommon for mortgagees to be permitted to sell the mortgaged property before the mortgage is due, and cases may arise where it is as necessary that they should do so as that property attached or in the hands of a receiver should be converted into money pending the litigation; and where the parties to the mortgage, in good faith, consent to such a course, it is not necessarily an evidence of fraud.

---

tion, and within the same disposition, whereby the debtor's entire estate is applied to the payment of all his debts. In other words, the preferences, to come within the language and the mischief of the statute, must be made in separate form to avoid the effect, which the statute would operate, of annulling them if they were included in the assignment itself.

6. *Dwight v. Lumber Co.*, 67 Mich. 507, holding that the intent of a mortgagor to evade the statute, by the execution of a mortgage to secure a *bona fide* debt in anticipation of and contemporaneous with a general assignment for the benefit of his creditors, cannot affect the validity of the mortgage, where the mortgagee is innocent of any such intent, and does not knowingly participate therein.

7. *Burnham v. Haskins*, 79 Mich. 35, 39, holding that the Court have adhered strictly to the rule laid down in *Root v. Potter*, 59 Mich. 506, and uniformly upheld securities taken by a creditor for a *bona fide* indebtedness, under circumstances and testimony showing that the creditor had no notice or knowledge that the debtor contemplated the making of a general assignment, or where the acts of giving the security and making the assignment were done in such time and manner as not to be parts of one and the same transaction.

### By Whom the Question May Be Raised.

1. *Coots v. Radford*, 47 Mich. 37, holding that an attaching creditor cannot show, in an action of trover brought by the assignee for the value of the attached property, that the assignment was with preferences, within the meaning of the statute.

2. *Butler v. Wendell*, 57 Mich. 62, holding that assignments with preferences for the benefit of creditors are valid instruments at the common law, and, if made in this State, can only be challenged at the instance of creditors of the assignor.

3. *Wolf v. Slosson*, 83 Mich. 543, 546, holding that an assignment for the benefit of creditors, when fully perfected, cannot be set aside at the suit of an attachment or execution creditor, by proof of an unlawful preference; that relief against such a fraud

4. Where a chattel mortgage given to secure existing indebtedness, the larger portion of which is not due, provides for the payment of the indebtedness at maturity, and there is nothing on the face of the mortgage conferring any power of sale before that time, a parol arrangement, existing at the time the mortgage is given, conferring such power, will be merged in the mortgage; and while such an arrangement, if afterwards made, may tend to show collusion, it will not, as matter of law, become a part of the mortgage, and destroy its validity.

5. Parties cannot be concluded by a judgment for the return of property in a replevin suit, where it is based upon a voluntary nonsuit submitted to before the controverted questions of fact were submitted to the jury.

Appeal from Gogebic.    (Haire, J.)    Argued April 10, 1894.  Decided May 23, 1894.

is provided for by sections 6 and 11 of the act, but, when given, it will be for the benefit of all concerned as creditors.

*Illustrative Cases.*

1. *Root & Co. v. Harl,* 62 Mich. 420, holding that an honest indemnity mortgage, executed the day before the mortgagor made a general assignment for the benefit of his creditors, is not affected by its proximity to the assignment.

2. *Sweetzer v. Higby,* 63 Mich. 13, holding that where, in contemplation of an assignment in the near future, an insolvent firm secure certain of their creditors by chattel mortgage on the firm property, and the mortgagees accept the mortgage in payment of, or as security for the payment of, just and valid debts, without knowledge on their part of the contemplated assignment, the mortgage is not fraudulent as a preference in their favor; and *Field v. Fisher,* 65 Mich. 606, where the same doctrine is laid down.

3. *Burnham v. Haskins,* 79 Mich. 35, where a son chattel-mortgaged to his mother and step-father substantially all of his property, and afterwards, and on the same day, made a general assignment for the benefit of creditors, naming as assignee the attorney who prepared the mortgage; the mortgagees knowing, at the time, of the intention of the son to make said assignment, and the design of the parties being to give the mortgagees a preference over other creditors in the conveyance about to be made for their benefit. And it was held that the mortgage and assignment were parts of one transaction, though made in separate form to avoid the effect, which the statute would operate, of annulling them if they had been included in one instrument.

4. For cases determining whether certain conveyances were in effect common-law assignments, and hence void for preferences, see *Bagg v. Jerome,* 7 Mich. 145; *Walker v. White,* 60 Id. 427; *Kendall v. Bishop,* 76 Id. 634; *Atkinson v. Weidner,* 79 Id. 575; *Sheldon v. Mann,* 85 Id. 265; *Warner v. Littlefield,* 89 Id. 329; *Fitzgerald v. McCandlish,* 89 Id. 400; *Bank v. Lumber Co.,* 90 Id. 345; *Weber v. Childs,* 90 Id. 498; *Warren v. Dwyer,* 91 Id. 414; *Pettibone v. Byrne,* 97 Id. 85; *Cluett v. Rosenthal,* 100 Id. 193.

Bill to foreclose certain mortgages, for an accounting, and the appointment of a receiver. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Ball & Ball* (*Moses Hooper,* of counsel), for complainant.

*Hayden, Humphrey & Young* and *Foster & Bushnell* (*George Hayden* and *F. H. Bushnell,* of counsel), for defendant.

HOOKER, J.　Hoxie & Mellor were copartners residing in Wisconsin. They carried on business in that state, and also at Ironwood, Bessemer, and Marenisco, Mich.　They were wholesale dealers, and handled coal, lumber, and other commodities, and owned mills where lumber was sawed and manufactured.　On September 1, 1890, they were heavily indebted to the several parties to this suit, and the complainant, a bank doing business in Wisconsin, fearing that they would make an assignment, came to this State, and caused an attachment to be issued and levied upon most, if not all, of the property belonging to the firm within this State, which was subject to levy. Complainant's claim consisted of paper given by Hoxie & Mellor for money borrowed of the complainant, amounting to $65,000.　In addition, they were liable as indorsers upon a large amount of paper discounted by the bank. Complainant's paper was not due, and the writ of attachment issued upon an allowance by telegram from the judge of the circuit court. Upon the same day, *i. e.,* September 1, 1890, an arrangement was made between Hoxie & Mellor and the complainant, whereby the former executed and gave to the complainant a real-estate mortgage upon their real property in Gogebic county, and three chattel mortgages, respectively, covering their personal property in the cities of Ironwood and Bessemer and the township of Marenisco. The mortgages were in the usual form.　They also executed and

delivered to the complainant an assignment of their Michigan accounts, in trust, to be collected and applied to its claims due or to become due. At the same time they gave a real-estate mortgage for $10,000 to defendant Bouck, who was also a creditor.

The mortgagee took immediate possession of the property, and proceeded to sell it in the ordinary course of business. This was done at the request of the mortgagors, with a view to avoid the sacrifice attendant upon the delay of legal proceedings, and the cost and uncertainty of a judgment sale. This arrangement was not in writing, though it was a part of the inducement upon which the mortgages were given. It was agreed that one Al. Hoxie should be employed to take charge of the property, and the employés were to be kept while the sales were being made, so far as practicable. There was no agreement that the stock should be kept up, but the mills were kept running to manufacture lumber from logs, and some purchases were made to complete existing contracts.

At the time of these transactions, Hoxie & Mellor had many other creditors, and, soon after, attachment suits were commenced by some of them upon claims some of which were immature. The officers, defendants McIntyre and Foley, being, respectively, under-sheriff and sheriff, seized the chattel-mortgaged property on the 16th day of September, 1890. Thereupon complainant advertised for sale the personal property in Ironwood, and it was bid in by Curtis & Shoemaker for $21,000, which sum was paid by their promissory notes. The sheriff refused to deliver the property to the purchasers, and it was replevied by them. Upon the trial, and before verdict, they submitted to a nonsuit. Subsequently, an action was brought upon the replevin bond, and was transferred to the federal courts, where it is now pending.

Matters being in the situation mentioned, the bill in this

cause was filed by the National Bank of Oshkosh to settle the rights of all of the parties, asking for a receiver, an accounting, a foreclosure of the mortgages and sale of the property, the application of the money received to the payment of its claim, etc. A ' receiver was appointed, pending the suit, who converted the property into money. A decree was rendered for the complainant, ordering the property sold, an accounting as to the amounts due and received by the complainant, and the manner of disposing of the surplus, if there should be any. From this decree some of the defendants appeal. They attack complainant's mortgages upon the grounds:

*First.* That they were given and received with the intent to hinder, delay, and defraud the other creditors of Hoxie & Mellor.

*Second.* That such mortgages, together with the oral agreement in relation to the possession and conduct of the business, were void, because a fraud upon the general assignment law.

*The intention to hinder, delay, and defraud creditors.*

This claim is based—

1. On evidence that complainant feared, or possibly knew, of the insolvency of Hoxie & Mellor, and an intention upon their part to make a general assignment for the benefit of creditors.

2. That it arranged to conduct the business for them in the capacity of trustee, using the attachment and mortgages to prevent other creditors from interfering with the property.

3. That it insisted upon its attachment lien and mortgages at the same time.

4. Collusion between Mellor and complainant's cashier, whereby something could be saved for Hoxie & Mellor, and accomplish the same purpose as by an assignment.

5. That it was the understanding that creditors should be prevented from "jumping on or sacrificing" the property.

6. The agreement to permit a relative of Hoxie to take charge of the business at a salary of $100 per month.

7. The fact that money realized was not at once applied upon complainant's claim.

8. The method of conducting the business, including the purchase of materials, etc., without keeping it separate from the mortgaged property.

The various incidents discussed in connection with this subject cannot be incorporated in this opinion.

We have little doubt that the complainant was as well informed as was practicable of the condition of its debtors. If it knew of their intention to make an assignment, it was natural and lawful for it to attempt to secure its claim before it was made. It was under no obligation to defer action upon that account, either in relation to the attachment or mortgages; and it has been repeatedly held, that the knowledge that the claims of other creditors would be thereby postponed, or perhaps cut off altogether, would not make an arrangement fraudulent; and this might be true in this case, though the bank knew that Hoxie & Mellor yielded assent because of an expectation that the mortgages would be a shield to them, so long as there was no collusive assistance rendered with that object in view.

Again, it was a matter of mutual interest, regardless of other creditors, that the delay and sacrifice invariably attendant upon collection by process of law should be avoided. It is no uncommon thing for mortgagees to be permitted to sell before the mortgage is due, and cases may arise where it is as necessary that they do so as that property attached or in the hands of a receiver be converted into money pending the litigation; and in the former case, where the parties in good faith consent to such course, it is not necessarily an evidence of fraud. In this case, complainant's attachment may have been void. In fact, it seems to have been quashed upon that ground. It may have been compelled to agree to proceed at once to sell in the usual course of business to obtain its mort-

gages. What objection could any creditor have to such a course, where the sales were essential to prevent a ruinous shrinkage, and the business was honestly conducted, and the proceeds strictly accounted for?

In this connection we may mention the admixture of property purchased. Some of this was in transit when the mortgages were made. Freights were paid upon goods manufactured in the mills, and shipped from one place to the other for sale. If the complainant failed to do its duty, or exceeded its rights under the mortgages, it is accountable, and, if it admixed property so as to render it indistinguishable, it might be the loser; but it does not follow that the mortgages were fraudulent. That question must depend upon—*First*, the presence of a collusive attempt to hinder, delay, or defraud creditors; or, *second*, the nature of the contract made. If its legal effect was a violation of the assignment law, it was void; otherwise, not.

Complainant's counsel, when interrogated, asserted that he relied upon both the attachment and the mortgages. We think this explainable as a precautionary statement that he proposed to rely upon all of the rights that his client had, and did not propose to be put to an extrajudicial election.

Nor are we impressed by the claim that the complainant was attempting to shield Hoxie & Mellor from other creditors. All that it did was consistent with the theory that it had in view its own interests only, and the expectations and understandings of Hoxie & Mellor, which counsel claim to have shown on the trial, fall short of collusion on the part of the complainant. We think that the intent to hinder, delay, and defraud creditors does not appear.

The next question to be discussed is the character and effect of the mortgages. Upon their faces they were ordi-

nary mortgages. They are said to have covered a part, only, of the Michigan property; but, whether that is so or not (and it does not appear from the mortgages that all was covered), the firm had property in Wisconsin, which afterwards sold for upwards of $91,000. These mortgages provided for the payment of the debts mentioned in them when they should respectively fall due. There was nothing in them which conferred any power of sale before the respective claims matured; and, if such an arrangement existed at the time the writings were made, it was not one which the complainant could enforce, the talk being merged in the writings. If, on the other hand, it was subsequent to the writing, it would not, as matter of law, become a part of the writing, and make void that which was before valid. It might tend to show collusion; but that is another question, already disposed of.

Defendants contend that these mortgages were void in law:

"1. Because it effected a trust in the mortgagee for the use of the mortgagors.

"2. Because it was, in its effect and admitted purpose, an assignment, which, without any consideration but a precedent debt, and without discharging that debt, removed the property from the control of the debtors, and beyond their power to redeem, while it deprived creditors of any chance to secure a lien upon it, and placed it beyond the reach of their process, and was thus more than a mere security.

"3. The agreement forming part of this mortgage for continued possession in the mortgagee with power, and the requirement, to sell and dispose of the property and conduct the business, the mortgage debt not being due, deprived the transaction of its legal character as a mortgage, and constituted a legal fraud upon creditors."

The above proposition rests upon the claim that the mortgage and the verbal arrangement for possession and sale constituted, in law, "the mortgage;" in other words, that "this mortgage" rested partly in writing and partly

in writing and partly in parol. This is a necessary claim upon the part of defendants, because the mortgage itself does not, upon its face, effect any trust, nor does it indicate that its purpose was an assignment. It needed no consideration beyond a precedent debt, and it did not remove the property beyond the reach of creditors, who did attach it, and might have done so subject to complainant's mortgages had they seen fit. Had the mortgagors given a mortgage making the debts due at once, with the power to sell at public or private sale or in the usual course of trade, it would have been a lawful act, of which no creditor could complain. See *Cluett v. Rosenthal, ante,* 193. They did no more, in effect, when they authorized the creditor to take possession to preserve its security, but required it to proceed with sales at once, as a protection to the property, and the good will connected with it, which probably enhanced its value, and would naturally increase the price that the real estate would bring. The good will was not mortgaged, being intangible, but it was inseparable from the property, except as it might be lost by discontinuance of the business.

The mortgagee acting under a power is always, and of necessity, a trustee. As was said in *Warner v. Littlefield,* 89 Mich. 335, the mortgages "did not vest in the bank the absolute title to the property, and place it beyond the reach of creditors. If valid, the mortgagor and subsequent lien-holders had a right of redemption; not so if it was a common-law assignment." And this is so though the parol agreement be treated as part and parcel of the mortgages. Mr. Justice CHAMPLIN's discussion of the case of *Bagg v. Jerome,* 7 Mich. 145, shows that to have been as strong a case as this in most particulars. It involved a conveyance by a debtor, unquestionably insolvent, of all his property, and there was a resulting trust; yet the mortgage was held good. The same case, *i. e., Warner v. Littlefield,* page 339,

is authority for the proposition that all property may be mortgaged; citing *Sheldon v. Mann*, 85 Mich. 265, where the authorities are discussed. Again, on page 340, the distinguished jurist says that—

"Neither the fact of insolvency, nor the knowledge of the debtor's insolvency on the part of the mortgagee, will defeat or impair a mortgage security taken for an honest debt."

And, further:

"The difference between a chattel mortgage and a common-law assignment is that one is a conditional transfer of property, and the other is an absolute transfer. From one, the debtor, the attaching or execution creditor, or a subsequent mortgagee has a right to redeem; from the other there is no right of redemption."

In the present case, the instruments upon which the bank's rights were based conveyed nothing in the nature of an absolute title, and the agreement itself was a mere authority to proceed with sales in a certain way, inconsistent with the absolute and unlimited title or control of the property. Closing out the business by sale of all the personal property before the mortgages became due would not have been according to the "requirement" of the contract, as counsel call it, and certainly any attempt to sell the real estate, except through regular foreclosure proceedings, would have conveyed no title. It is plain, therefore, that, whatever the design, the agreement actually made falls short of an assignment for the benefit of creditors with preferences.

Our statute prohibiting preferences in cases of assignment is in derogation of the common law. Like all statutes in derogation of the common law, this statute is to be strictly construed. It only applies when the instrument can fairly and legitimately be said to possess all of the essential elements of an assignment; and courts should not permit such essentials to be dispensed with, or substitute

real or supposed equities for them, or unduly construe instruments intended for securities to be assignments. In such cases there is usually a contest for the property, which at most becomes a question of whether the debtor's preference can be overturned for that of some creditor who hopes to make his claim good under an attachment, through a flaw in the instrument made to effectuate the preference of the debtor. Perhaps the equities are quite as likely to be with the creditor preferred by the debtor; at all events, there can be no legal presumption to the contrary.

We need not discuss the case further, except to say that we think parties cannot be concluded by a judgment for the return of property in a replevin suit, where it is based upon a voluntary nonsuit before the controverted questions of fact were submitted to the jury.

The decree of the circuit court will be affirmed, with costs.

The other Justices concurred.