# JUNE TERM, 1894.

CHARLES AUSTIN, TRUSTEE, ETC., v. THE FIRST NATIONAL BANK OF KALAMAZOO, FRED A. DIGGINS, AND DELOS F. DIGGINS, IMPLEADED WITH THE UNION SCHOOL FURNITURE COMPANY AND ALONZO K. PRENTICE.

| | |
|---|---|
| 100 | 613 |
| 106 | 198 |
| 100 | 613 |
| 113 | 103 |
| 100 | 613 |
| 115 | 526 |
| 100 | 613 |
| 117 | 260 |
| 117 | 261 |
| 100 | 613 |
| d119 | 521 |
| 100 | 613 |
| 125 | 60 |
| 100 | 613 |
| 147 | 3559 |
| 100 | 613 |
| 152 | 3335 |
| 152 | 5336 |

*Assignment for benefit of creditors — Preferences — Validity of mortgages.*

1. Where attaching creditors seek to show that instruments executed by their debtor to secure other creditors legally transfer an absolute title in trust for their benefit, they must build up an assignment valid upon its face to convey the absolute title to the trustee, before they can demolish it for its preference of said particular creditors.[1]

2. The character of such an instrument cannot depend upon what the trustee does after he takes possession of the property. If he does things which the instrument gives him no authority to do, it will be at his peril, but the rights of creditors cannot be lost by his notion of his powers.

3. The law does not require a debtor to make an assignment for the benefit of creditors. He may compel each creditor to collect his debt by process of law. He may use his property in the payment of preferred debts, either by its sale and the application of the proceeds to such payment, or by selling the property directly to the creditor in extinguishment of the debt, in whole or in part. He may mortgage, pledge, or otherwise secure the creditor. But he must not assign to a trustee for

[1] For cases bearing upon the construction of 3 How. Stat. § 8739, which voids assignments for the benefit of creditors if made with preferences, see *National Bank v. First National Bank,* ante, 485, and note.

the benefit of creditors unless he assigns all of his property, and he must not in such case prefer creditors, and, if he does, his attempt will be a failure, regardless of his intentions.

4. A school furniture company, having lost its entire plant by fire, conveyed its real estate and mortgaged its personal property and choses in action, including its claims for insurance, in trust, to secure certain of its creditors. The deed contained no defeasance, but required the grantee to take possession of the property and receive the rents; to sell the same, in bulk or in parcels, in such manner and at such times, for cash, as would enable him to realize the most money therefor; to pay the taxes, and keep the property insured; and from the proceeds of such sales, and the proceeds of the mortgaged assets, to pay, first, his expenses as trustee, and a reasonable compensation for his services, and, with the remainder, to pay in full the secured claims, if the fund should be sufficient for that purpose, and, if not, to pay the same *pro rata*, and return the surplus, if any, to the corporation. The trustee accepted the trust, and, after entering upon its performance, the property was attached by certain unsecured creditors, who, in a suit brought by the trustee to foreclose both instruments as mortgages, defended upon the ground that they attempted to transfer the *absolute* title to all of the corporate property, in trust for the payment of the claims of certain preferred creditors, and were therefore void under the assignment statute. And it is held that, as between the parties, the deed was a mortgage; that the corporation could pay the indebtedness, and compel a reconveyance, and, if it did not, any attempt by the trustee to sell and convey the land would be futile without foreclosure, which a court of equity might properly decree in a suit between the parties. And it is further held that the instrument does not convey an absolute title as against creditors, and that there is nothing to prevent creditors from reaching the equity of redemption.

5. The chattel mortgage was to be void upon the payment by the mortgagor, within 10 days from its date, of the mortgage debts. The mortgagee was authorized to take possession of the property on the execution and delivery of the mortgage, and was given power to collect, settle, or compromise, by suit or otherwise, all of the demands and choses in action, capable of collection, covered by the mortgage; to insure such of the property as he might deem wise; to gather together the property, and realize the most possible out of that portion saved from the fire, and to expend such sums as might be necessary for its care and preservation, including its repair and putting

it in condition for sale. And it is held that none of these things made the title absolute in the mortgagee, which seems to be involved in an assignment for the benefit of creditors.

Appeal from Calhoun. (Smith, J.) Argued February 14, 1894. Decided June 16, 1894.

Bill to foreclose certain mortgages. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Hulbert & Mechem* (*B. F. Graves* and *C. E. Thomas,* of counsel), for complainant.

*Osborn & Mills* (*Howard & Roos,* of counsel), for defendant First National Bank.

*Haskins & Giddings* (*J. B. Judkins,* of counsel), for defendants Diggins.

HOOKER, J. The Union School Furniture Company of Battle Creek, a corporation, lost its plant by fire. It had a large outstanding indebtedness, considerable of which was secured by paper indorsed by some of its directors. A meeting was held, and it was proposed to make an assignment to a trustee, for the benefit of certain creditors; but, upon information that such an assignment would be void, it was determined to execute mortgages of the real and personal property to such trustee, and instruments intended as such were executed and delivered.

The first instrument is a deed of a number of parcels of real estate running to Charles Austin, as trustee of certain named creditors, reciting the fact of an existing indebtedness owing to these creditors, and that the party of the first part is desirous of securing the payment of the same, and containing a further recitation as follows:

"And whereas, said first party has contemporaneously herewith executed and delivered to said second party a certain instrument in writing, which is duly filed in the office of the city recorder of the city of Battle Creek,

by which instrument it has transferred to said second party, in trust, certain personal property and personal assets, to which said instrument, for more particular certainty, reference is hereby made."

The instrument contains no condition or defeasance, but declares a trust as follows:

" To take possession of all of said property, and receive and collect the rents, issues, and profits thereof; to sell the same, in bulk or by parcels, in such manner and at such times, for cash, as will enable him to realize the most money therefor; to pay the taxes thereon, and keep the property properly insured. From the proceeds of such sale, and from the proceeds of the personal assets transferred to him by the instrument hereinbefore mentioned, he shall pay and apply the same in the following manner, to wit:

"*First.* He shall pay all the expenses incurred by him in the execution of this trust, together with a reasonable compensation for his own services.

"*Second.* With the residue and remainder he shall pay in full all the claims hereinbefore mentioned, if sufficient there shall be; and, if not in full, he shall prorate the same among them in proportion to the amount of their respective claims.

"*Third.* The surplus, if any, shall be returned to the first parties."

The other instrument recites the indebtedness, conveys all the personal property of the company and rights in action, including the insurance, with a condition as follows:

"To have and to hold the same forever: *Provided,* however, and these presents are upon the express condition, that if said first party shall pay, or cause to be paid, to said Austin, trustee, the claims and demands aforesaid, and each and all thereof, within 10 days from date hereof, then this obligation shall be void; otherwise to remain in full force. And the said first party agrees to pay the same accordingly."

The instrument gives immediate possession to the trustee, and contains the following additional provisions:

" If default be made in the payment of said debts, and

the interest thereon, or any portion thereof, within the time or manner herein provided, or in any of the terms and conditions hereof, then the said trustee, his successors or assigns, or his or their authorized agent, is authorized to sell said property, which is capable of direct sale, either by private sale, in bulk, or by parcels, or by public auction to the highest bidder, after giving reasonable notice of such sale; and said trustee is also authorized to collect, settle, or compromise, by suit or otherwise, all of the said demands and choses in action capable of collection, in our name or otherwise; and said trustee is also authorized to insure such goods and chattels as he deems wise, and to pay all taxes assessed against the same, and add the charges for such insurance and taxes to the debt hereby secured, to be payable forthwith, with interest. Said trustee is also authorized to gather together all of the property of said first party covered hereby, and realize the most possible out of the salvage from the late fire, and to expend all such sums of money as may be necessary therefor, and as may be necessary for the care and preservation thereof; and he may also repair said property, and put the same in the best possible condition for sale, so that the largest amount can be realized therefor."

The trustee, who is the complainant, took possession of the property under these instruments, and proceeded to remove machinery and other articles from the burned factory and buildings, and put the same in shape for sale. He made some small repairs upon the shop, and, with materials on hand, finished some work in process of construction, and filled some contracts made by the company previous to the fire.

The complainant filed the bill in the cause for a foreclosure of the instruments, which he calls "mortgages," making parties defendant certain attaching creditors and the officer who levied the attachments. The defendants contend that the instruments are "fraudulent and void as against them, and that they do not constitute, at law or in equity, an incumbrance upon the property, or amount to a security thereon, but that they are, at law and in equity, *fraudulent and void,* absolutely, as constituting

and being an assignment of all of the company's property, assets, and effects to complainant, with fraudulent preferences, in violation of the laws of this State." They further claim that they are secondary to their attachment liens.

It appears from the foregoing that there is no claim that these instruments amounted to a valid assignment for the benefit of creditors. It is equally clear from the evidence that the company never intended to make such an assignment as would have been valid under How. Stat. § 8739, for it is plain that it at all times proposed to prefer certain creditors. The contention is not made that these instruments are in effect a valid assignment, so that a court of chancery can take jurisdiction and enforce them as such, under section 8744. The question is, therefore, whether the instruments can stand as valid mortgages, or whether they must be held void, upon the ground that they attempt to transfer the absolute title to all of the debtor's property, in trust for the payment of preferred creditors, in contravention of How. Stat. § 8739.

The instrument covering the real estate contains no defeasance. It does, however, recite that the "first party is desirous of securing payment of certain debts, and indemnifying" certain parties, and requires the surplus to be returned to the company. There can be no doubt that this instrument would be held a mortgage, if any question should arise upon it between the parties to it. The mortgagor could pay the indebtedness, and compel a reconveyance; and, if it did not, any attempt by the trustee to sell and convey the lands would be futile, without foreclosure. On the other hand, a court of equity might properly decree foreclosure in a suit between such parties. How, then, can it be said that the instrument itself was effective to convey an absolute title as against creditors, when it did not do so as between the parties, and, if it

did not, what is to prevent creditors from reaching the equity of redemption? Manifestly, we cannot say that it is more than a mortgage when other creditors raise the question, and that it is only a mortgage when the secured creditor attempts to sell the property under it.

The other instrument is upon its face a mortgage, unless by reason of its attempting to confer some inconsistent powers upon the trustee. These are said to be possession given before the mortgage is due; the power to collect, settle, and compromise outstanding debts covered by the mortgage; the power to insure the goods; the power to gather together the property, and to realize the most possible out of the property saved from the fire, and to expend such sums as may be necessary for the care and preservation thereof, including repair of the same and putting in condition for sale.

A conditional power to take possession of property before the mortgage is due is common in mortgages of chattels. The statute against fraudulent conveyances (How. Stat. § 6193) contemplates change of possession in such cases, providing that every mortgage of goods and chattels, if not accompanied by an immediate change of possession, shall be void unless filed, etc. A change of possession is involved in the pledging of goods by way of security. The power to gather together, to insure, to repair, etc., is much the same as the power to take and safely keep, at the expense of the mortgagor, common in mortgages. The power to collect and settle outstanding accounts may be unusual, for such claims are not commonly mortgaged; but it is not uncommon for such claims to be used as collateral security, when the right to collect goes with the pledge. In the absence of an agreement that he might do so, the creditor would not have the right to compromise such claims, but can there be any reason why the power might not be conferred? And, if it were, can it be said that it would be

less a pledge, or that the creditor would have any more than a security? At all events, none of these things make the title absolute, which seems to be involved in an assignment for the benefit of creditors. *Warner v. Littlefield,* 89 Mich. 337, 338, 340, 341.

The law does not require any man to make an assignment. *Warner v. Littlefield,* 89 Mich. 349; *Sheldon v. Mann,* 85 Id. 273. He may compel each creditor to collect his debt by process of law. He may use his property in payment of preferred debts, either by sale and application of the proceeds, or by selling directly to the creditor in extinguishment of or application upon the debt. He may mortgage, pledge, or otherwise secure the creditor. But he must not assign to a trustee for the benefit of creditors unless he assigns all, and he must not in such case prefer creditors. If he does, his attempt is a failure, regardless of his intentions. If, however, the instrument that he makes legally amounts to an assignment for the benefit of creditors, he may find that he has made an assignment contrary to his intention.

In this case no assignment was intended. The instruments, upon their faces, do not purport to be valid assignments, nor do they in fact amount to valid assignments, as defendants themselves claim. "As long as no assignment for the benefit of creditors is made, or the transaction does not amount in law to such an assignment, the debtor is at liberty to pay or secure any of his creditors at the expense of the others." *Sheldon v. Mann,* 85 Mich. 273.

The character of the instruments cannot depend upon what the trustee did after taking possession. If he did things which the instruments gave him no authority to do, it was at his peril, but rights of creditors could not be lost by his notions of his powers.

The attempt of defendants is to show that the instruments in question legally transferred an absolute title, in

trust for the benefit of preferred creditors. They must build up an assignment for the benefit of creditors, valid, upon its face, to convey the absolute title to the trustee, before they can demolish it for its preference of particular creditors. We think they have failed, and that the instruments are valid mortgages. The complainant is entitled to the relief sought.

The decree of the circuit court will therefore be affirmed, with costs.

The other Justices concurred.