## ONTARIO BANK OF TORONTO, CANADA, v. HURST et al.

### (Circuit Court of Appeals, Sixth Circuit. July 13, 1900.)

### No. 769.

1. FRAUDULENT CONVEYANCES—PREFERENCES BY DEBTOR.

As a general rule, a debtor has a right to secure a bona fide creditor, and, although such action may serve to prefer one creditor over another, such preferences are not regarded as fraudulent.

2. SAME—CONSTRUCTION OF CONVEYANCE—ASSIGNMENT OR MORTGAGE UNDER MICHIGAN STATUTE.

The Michigan statute (How. Ann. St. § 8739) providing that common-law assignments for the benefit of creditors shall be void unless the same shall be without preferences as between such creditors, and shall be of all the property of the assignor not exempt from execution, as construed by the supreme court of the state, does not render void a conveyance of property, either personal or real, in trust to secure bona fide creditors, with power in the trustee to sell the property and pay the debts, with interest, although it provides that certain creditors shall be first paid from the proceeds, and contains no defeasance clause, where it further provides that any surplus shall be returned to the debtor, so that it is in legal effect merely a mortgage, or an instrument creating a trust to sell lands for the benefit of creditors, which does not withdraw the debtor's equity of redemption in the property from the reach of his other creditors, and under which he or they could compel a reconveyance on payment of the debts secured.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

James T. Hurst, a resident of Wayne county, Mich., had conducted a large lumber business for some years preceding the transaction hereinafter recited. extending over the states of Minnesota and Michigan and the dominion of Canada. Being largely indebted, and security having been demanded of him, on the 22d day of July, 1896, Mr. Hurst, joined by his wife, executed and delivered to Harrison Geer, Joseph Turner, and Hezekiah M. Gillett, trustees, a certain instrument, to wit:

"This indenture, made this 22d day of July, A. D. 1896, by and between James T. Hurst and Mary A. Hurst, his wife, of Wyandotte, Wayne county. Mich., parties of the first part, and Harrison Geer, of Detroit, Joseph Turner and Hezekiah M. Gillett, both of Bay City, Mich., together trustees in trust for the uses and purposes hereinafter stated, parties of the second part, witnesseth, that whereas, the said James T. Hurst is obligated and indebted to the following persons, firms, and corporations, either directly or contingently by way of indorsements, as maker or otherwise, in the amounts set opposite their names, respectively, viz.:

| | |
|---|---|
| Nelson Holland, of Buffalo, N. Y. | $118,000 |
| Joseph Turner and Spencer O. Fisher, co-partners as Turner & Fisher | 261,000 |
| S. O. Fisher | 50,000 |
| Saginaw Bay Towing Association, a co-partnership | 26,000 |
| Benjamin Boutell | 22,500 |
| Hezekiah M. Gillett, of Bay City | 3,000 |

Henry M. Campbell, of Detroit............................... 13,000
A. L. Nowlin................................................ 10,000
Delta Lumber Company....................................... 7,500

—And whereas, the said Hurst desires to pay the said creditors from the property hereinafter described, as far as practicable, or as far as necessary, in the following order, viz.: First. Nelson Holland's claim shall be paid out of the first proceeds derived from said assets, together with interest at 6 per cent. per annum. Second. All the remainder of said creditors shall be paid from the proceeds thereafter derived from said assets pro rata until all of said claims are fully paid, including interest thereon at 6 per cent. per annum: Now, therefore, in consideration of the premises and one dollar to them in hand paid, the said parties of the first part have conveyed, granted, bargained, sold, remised, released, aliened, and confirmed, and by these presents do convey, bargain, sell, remise, release, alien, and confirm, unto the said parties of the second part, to them and their successors and assigns, all the property hereinafter named, in trust, nevertheless, for the following uses and purposes, viz.: (1) To assume possession thereof, to manage and rent, and out of the rents and proceeds of sale to pay taxes, insurance, liens, and incumbrances, if any, and their reasonable expenses. (2) To sell and convey said property, or any part or interest therein, and to make, execute, and deliver deeds of conveyance thereof, at such prices and upon such terms and conditions as they shall deem best. (3) From the proceeds of rents and sales of said property, after the payment of accrued taxes, insurance, and expenses, to first pay the said claim of Nelson Holland, with interest, and from the remainder of such proceeds, as the same shall come to their hands, to pay the balance of said claims pro rata. (4) The surplus, if any, shall be paid to said James T. Hurst, or to such person or persons as he shall direct. The properties conveyed by this instrument are described as follows: All those certain pieces or parcels of land, with the appurtenances thereon, situated, lying, and being in Wayne county, state of Michigan, to wit." (Description of property follows, duly signed and acknowledged.)

At the same time, and in consideration of the foregoing conveyance, said Holland, whose debts were first secured, by his attorney, executed a writing for the benefit of said Hurst, which is as follows:

"In consideration that James T. Hurst has, concurrently with the date hereof, conveyed certain lands in Wayne county, state of Michigan, to Harrison Geer, Joseph Turner, and Hezekiah M. Gillett, as trustees, to first secure Nelson Holland to the extent and amount of one hundred and eighteen thousand dollars ($118,000), which is in addition to other collateral held and to be retained by said Nelson Holland, the said Nelson Holland agrees to pay and take up fifty-five thousand dollars ($55,000) of notes, which, although made by Holland, are for Hurst to pay. And the said Holland further agrees that he will procure the Holland & Emery Lumber Company to assume and agree to pay certain other notes amounting to two hundred and thirty-nine thousand and five hundred dollars ($239,500) upon which, in fact, the said Hurst is primarily liable (a description of all of which notes, aggregating two hundred and ninety-four thousand and five hundred dollars [$294,500] is hereto attached); and also to procure said company to discharge and satisfy a claim appearing upon the books of said company against said Hurst of about nine thousand dollars ($9,000), and to cancel and to surrender to said Hurst his note, upon which there was a balance due to said company on July 14, 1895, of fifty-eight thousand eight hundred and ninety-two dollars and thirty-six cents ($58,892.36). And the said Holland agrees to procure the said Holland & Emery Lumber Company to assume and agree to pay certain other notes amounting to seventy-five thousand dollars ($75,000), which said last-mentioned notes were made by said company by Remple Emery, president, or by said Hurst, as vice president, but for the accommodation of said Hurst, a statement of which is hereto attached. As additional consideration moving from said Hurst, he has sold and conveyed unto said company whatever title and interest he has in any of the stock of said company.
                                        "Nelson Holland,
                                        "Per H. Geer, His Atty."

On the same day the trustees Geer and Gillett executed an acceptance of the trust in the following language:

"Mr. James T. Hurst—Dear Sir: You having of the date hereof executed and delivered to us a deed of a large amount of land in the county of Wayne, state of Michigan, in trust to secure indebtedness enumerated therein, as follows, to wit:

| | |
|---|---:|
| Nelson Holland | $118,000 |
| Joseph Turner and Spencer O. Fisher, co-partners as Turner & Fisher | 264,000 |
| S. O. Fisher | 50,000 |
| Saginaw Bay Towing Association, a co-partnership | 26,000 |
| Benjamin Boutell | 22,500 |
| Hezekiah M. Gillett, of Bay City | 3,000 |
| Henry M. Campbell, of Detroit | 13,000 |
| A. L. Nowlin | 10,000 |
| Delta Lumber Company | 7,500 |

—The condition of the trust being that we shall assume possession of the property, manage, rent, sell, and convey the same, using the income from the property and the proceeds of sales for the purposes of paying—First, taxes, insurance, expenses of the trust; and, secondly, to pay the claim of Nelson Holland, with interest; and out of the remainder, if any, to pay the balance of the claims above enumerated,—we hereby accept said trust, and jointly and severally undertake to faithfully execute the same in accordance with the letter and spirit of said conveyance to us.

"Harrison Geer.
"Hezekiah M. Gillett."

Complainant brought an attachment suit in the circuit court of Wayne county, Mich., on the 28th day of July, 1896, on a note given by Hurst, and obtained a judgment on March 9, 1897, against said Hurst for $79,687.38 and costs, upon which execution was issued, and levied upon the attached property, being the property conveyed by the deed of trust above mentioned. Complainant filed its bill in this case for the purpose of setting aside said conveyance, and asks for a decree declaring the same null and void.

George W. Radford and Henry M. Duffield, for appellant.
H. M. Campbell and Harrison Geer, for appellees.

Before LURTON and DAY, Circuit Judges, and CLARK, District Judge.

DAY, Circuit Judge, after stating the case, delivered the opinion of the court.

The three instruments above recited must be construed together. They are parts of one transaction, and their legal effect is to be gathered upon consideration of all of them, their objects and purposes. Lumber Co. v. Ott, 142 U. S. 622, 12 Sup. Ct. 318, 35 L. Ed. 1136. An examination of these instruments and a consideration of the circumstances under which they were executed satisfies us that the purpose and intent of the parties was to secure Holland and the other creditors named for the amount of the indebtedness. Holland had a large claim, which was placed in the hands of his attorney for the purpose of obtaining security. This Hurst finally consented to give in the form in which it was reduced to writing in the documents described. The instruments themselves show this purpose. It is said in the conveyance to the trustees that Hurst desires to pay the said creditors from the property thereinafter described, "as far as practicable, or as far as necessary." When sold, the debts are to

be paid from the proceeds of the property, together with interest, in the order named. There is no statement in the conveyance that the writing shall be considered as a satisfaction of the demands of the creditors therein named. While the purpose is expressed that they be paid, the manner of payment is shown to be out of the proceeds of the property. There is nothing in the instruments discharging Hurst from the indebtedness in the event that the property shall prove insufficient to pay the claim. Had it been intended to discharge the claim by the conveyance of the property, certainly interest would not have been provided for, to be paid out of the proceeds of the property sold. Furthermore, the surplus, if any, is to be paid to Hurst, or such person or persons as he shall direct. The trustees, in accepting the trust, say, addressing Hurst:

"You having of the date hereof executed and delivered to us a deed of a large amount of land in the county of Wayne, state of Michigan, in trust to secure indebtedness enumerated therein," etc.

And in a paper executed at the same time of the conveyance, made in behalf of Holland, it is recited that the things which Holland therein obligates himself to do for Hurst are in consideration that the lands have been conveyed to trustees to first secure Holland, etc. Looking at this transaction, we can have no doubt that its real purpose and intent was to secure the payment of the indebtedness in the order named in the instrument, and that it was so understood by all parties thereto. We have no doubt that, had Hurst paid these debts, he would have had a right to compel the trustees to convey the lands to him. The question in the case is, is there anything to prevent the purpose thus manifest from the acts of the parties being carried into effect, or have they failed to effectuate their purpose in the means adopted to carry it out? As a general rule, a debtor has a right to secure a bona fide creditor. Although such action may serve to prefer one creditor over another, such preferences are not regarded as fraudulent. Repeated adjudications in the state of Michigan recognize this right. Sheldon v. Mann, 85 Mich. 265, 48 N. W. 573, and cases there cited. We find no proof in the case warranting the conclusion that this conveyance was fraudulent in fact. That Hurst was largely indebted to the creditors whom he attempted to secure there is absolutely no contradiction in the record. There was nothing developed in the proof except that Hurst tried to secure his creditors, which he had a perfect right to do. Nor do we understand that the fact that the surplus, if any there shall be, after the payment of debts, is to be paid to Hurst, would in any wise invalidate the conveyance. This was the rule laid down by the supreme court of the United States in Huntley v. Kingman & Co., 152 U. S. 537, 14 Sup. Ct. 692, 38 L. Ed. 544, in which Mr. Justice Brown used the following language:

"Whatever may be the rule with regard to general assignments for the benefit of creditors, there can be no doubt that in cases of chattel mortgages (and the instrument in question, by whatever name it may be called, is in reality a chattel mortgage) the reservation of a surplus to the mortgagor is only an expression of what the law would imply without a reservation, and is no evidence of a fraudulent intent."

It has been principally argued in the oral discussion of the case that the conveyance by Hurst is void, because it operates as an assignment at common law, and is void under the Michigan statute (section 8739, How. Ann. St.) which enacts:

"All assignments, commonly called 'common-law assignments,' for the benefit of creditors, shall be void, unless the same shall be without preferences as between such creditors, and shall be of all the property of the assignor not exempt from execution."

This statute has been the subject of numerous judicial decisions in the courts of Michigan. The question of its construction and effect is a question upon which the decisions of the highest court of that state are authoritative and binding upon the federal courts. Lumber Co. v. Ott, 142 U. S. 622, 12 Sup. Ct. 318, 35 L. Ed. 1136; Brown v. Furniture Co., 7 C. C. A. 225, 58 Fed. 286, 22 L. R. A. 817. It would unnecessarily extend this opinion to review all the cases cited from the Michigan supreme court upon this subject, and perhaps be impossible to reconcile all that has been said by the judges in delivering the opinions, but we think, from the cases, the principle to be adduced is that this statute is one which operates to make void a general assignment for the benefit of creditors, unless the assignment is for the benefit of all creditors without preference. The words "common-law assignment," as construed by the supreme court of Michigan, include such general assignments as were known at the common law, in which the failing debtor undertook to devote his property to the payment of his debts through a trustee, in which case this statute requires that such conveyances shall be without preference as between creditors. The construction of this statute came before this court in Brown v. Furniture Co., supra, and in that case this court followed the case of Warner v. Littlefield, 89 Mich. 329, 50 N. W. 721. That is a leading case in the state of Michigan, and the opinion by Chief Justice Champlin is a very thorough and able one. Of that decision Judge Taft said (Brown v. Furniture Co., supra):

"It was decided in Warner v. Littlefield that a debtor, though insolvent, might secure a creditor for the payment of a pre-existing debt by mortgage upon all of his property, although he should have numerous creditors who were unsecured, and that neither the fact of the debtor's insolvency nor the knowledge of the creditor of that fact would defeat or impair a mortgage security taken for an honest debt; that the fact that the mortgagee was not the creditor of the mortgagor, and that the mortgage was executed in trust to secure certain specified creditors the amounts of the several claims, did not tend in any degree to give the instrument the character of a common-law assignment; that if the instrument was a conveyance given upon condition as a security for a pre-existing debt, and contained no trust in its body, whereby the property was withdrawn from the right of the mortgagor or others to redeem, who ordinarily have such right in cases of chattel mortgages, or whereby the title of the property was placed beyond the reach of execution as to any surplus, then the instrument was a chattel mortgage, but if it conveyed the absolute title to a trustee for the benefit of creditors, and thus placed the property and surplus beyond the reach of creditors, it was a common-law assignment; that the question whether the instrument was a chattel mortgage, or an assignment for the benefit of creditors, must, in all cases, be determined as a question of law upon the contents of such instrument, and not from any outside testimony; and that unless the conveyance on its face purported to con-

vey all of the debtor's property to secure certain preferred creditors by an abso-
lute title, the court was not at liberty to declare it a common-law assignment.
The case of Warner v. Littlefield only followed the case of Sheldon v. Mann,
85 Mich. 265, 48 N. W. 573, and was followed by the supreme court in Bank
of Montreal v. J. E. Potts Salt & Lumber Co., 90 Mich. 345, 51 N. W. 512."

We do not know that there is any necessary conflict in cases de-
cided by the supreme court of Michigan. In those cases in which
mortgages have been held invalid as a common-law assignment it
will be found that all the property has been conveyed with attempts
at preferences among creditors, or that the trustee has been given
power and authority over the property conveyed entirely incon-
sistent with the rights of creditors,—as in Kendall v. Bishop, 76 Mich.
634, 43 N. W. 645, where the trustee was empowered to continue the
manufacturing business, reinvest the trust funds, buy new stock,
mingle the new assets with the old, and was given other powers
inconsistent with the idea that he held the title merely as a security
or in trust to sell the same to pay debts. Like power was given the
trustee in Pettibone v. Byrne, 97 Mich. 85, 56 N. W. 236. In Warner
v. Littlefield, Chief Justice Champlin says (page 347, 89 Mich., and
page 727, 50 N. W.):

"There ought to be and is some underlying principle from which to deter-
mine whether an instrument is a chattel mortgage or a common-law assign-
ment. If the instrument is a conveyance upon condition, given as a security
for a pre-existing debt, and contains no trust in the body of the instrument
whereby the property is withdrawn from the right of the mortgagor or others
to redeem, who ordinarily have such right in cases of chattel mortgages, or
whereby the title of the property is placed beyond the reach of execution as
to any surplus, then the instrument is not an assignment, but a chattel mort-
gage. But if it conveys the absolute title to a trustee for the benefit of cred-
itors, and thus places the property and surplus beyond the reach of creditors,
it is a common-law assignment. Kendall v. Bishop was determined upon this
principle, and so were Root v. Potter, 59 Mich. 506, 26 N. W. 682, and Sheldon
v. Mann. * * * The statute providing that no general assignment for the
benefit of creditors shall be valid unless made for the benefit of all the cred-
itors applies only to general assignments, and the same does not apply to
other conveyances. * * * The execution of mortgages by an insolvent
debtor with the bona fide intention of securing particular creditors does not
operate as a general assignment for the benefit of creditors."

The language of Chief Justice Champlin is equally applicable to a
real-estate mortgage. Let us apply the tests he lays down. "If the
instrument is a conveyance given as security for a pre-existing debt,
and contains no trust whereby the property is withdrawn from the
right of the mortgagor to redeem, then the instrument is a chattel
mortgage." The writing in the present case shows it to be security
for a pre-existing debt, and there is nothing in the body of the in-
strument to prevent Hurst from redeeming. "Or whereby the title
of the property is placed beyond the reach of execution as to any
surplus." We find nothing in this instrument to prevent creditors
from pursuing the surplus by proper proceedings. "But if it con-
veys the absolute title to a trustee for the benefit of creditors, and
thus places the property and surplus beyond the reach of creditors, it
is a common-law assignment." We find nothing in this conveyance,
as we have said, that does place the surplus or Hurst's equity beyond
the reach of creditors. Applying these tests, we are clearly of the

opinion that the instrument in question was a mere security for the benefit of the creditors therein named, and that it is in no sense a common-law assignment, within the meaning of the Michigan statute.

In Warner v. Littlefield, it was further said:

"The statute of 1879 does not attempt to compass the object and purpose of the insolvent law. It does not prohibit any preference to creditors, unless the preference is made in a common-law assignment. It contains no provisions for the discharge of a debtor from all liability in case he transfers and delivers over to his assignee, for the benefit of all his creditors, all of his property. If the debtor makes a common-law assignment, he is still liable for any balance that may be due to his creditors after his assets are applied by his assignee to the payment of his debts pro rata. The creditors are not compelled to accept the terms proffered in the assignment.' They may stand aloof from the assignment, and may rely upon the liability of their debtor to pay. There is no provision for recovering preferences made on the eve of assignment. It is not either a bankrupt or insolvent law. It is of no particular use, and its only mission seems to be to beget litigation, and afford an opportunity for a creditor to obtain a preference over other creditors by asserting and occupying the inconsistent position that the chattel mortgage given to secure a bona fide debt is a common-law assignment, and therefore ought to be construed as such, and void as to creditors, while he attaches or levies execution, and thus obtains securities and preferences fully as unlawful and against the policy of the law."

In construing this statute in the case of National Bank of Oshkosh v. First Nat. Bank of Ironwood, 100 Mich. 485, 59 N. W. 231, Judge Hooker says:

"Our statute prohibiting preferences in cases of assignment is in derogation of the common law. Like all statutes in derogation of the common law, this statute is to be strictly construed. It only applies when the instrument can fairly and legitimately be said to possess all of the essential elements of an assignment; and courts should not permit such essentials to be dispensed with, or substitute real or supposed equities for them, or unduly construe instruments intended for securities to be assignments. In such cases there is usually a contest for the property, which, at most, becomes a question of whether the debtor's preference can be overturned for that of some other creditor, who hopes to make his claim good under an attachment, through a flaw in the instrument made to effectuate the preference of the debtor. Perhaps the equities are quite as likely to be with the creditor preferred by the debtor. At all events, there can be no legal presumption to the contrary."

We are unable to distinguish the case at bar from that of Austin v. Bank, 100 Mich. 613, 59 N. W. 597. The instrument therein construed contained no defeasance. It declares a trust, as follows (page 616, 100 Mich., and page 597, 59 N. W.):

"To take possession of all of said property, and receive and collect the rents, issues, and profits therefrom; to sell the same, in bulk or in parcels, in such manner and at such times, for cash, as will enable him to realize the most money therefor; to pay the taxes thereon, and keep the property properly insured. From the proceeds of such sale, and from the proceeds of the personal assets transferred to him by the instrument hereinbefore mentioned, he shall pay and apply the same in the following manner, to wit: First. He shall pay all the expenses incurred by him in the execution of this trust, together with a reasonable compensation for his own services. Second. With the residue and remainder he shall pay in full all the claims hereinbefore mentioned, if sufficient there shall be; and, if not in full, he shall prorate the same among them in proportion to the amount of their respective claims. Third. The surplus, if any, shall be returned to the first parties."

A chattel mortgage was also executed. It provided as follows:

"To have and to hold the same forever: provided, however, and these presents are upon the express condition, that if said first party shall pay, or cause to be paid, to said Austin, trustee, the claims and demands aforesaid, and each and all thereof, within ten days from the date hereof, then this obligation shall be void; otherwise, to remain in full force. And the said first party agrees to pay the same accordingly."

The chattel mortgage also gave immediate possession to the trustee, and contained the following provision:

"If default be made in the payment of said debts and the interest thereon, or any portion thereof, within the time or manner herein provided, or in any of the terms and conditions hereof, then the said trustee, his successors or assigns, or his or their authorized agent, is authorized to sell said property, which is capable of direct sale, either by private sale, in bulk or by parcels, or by public auction to the highest bidder, after giving reasonable notice of such sale; and said trustee is also authorized to collect, settle, or compromise, by suit or otherwise, all of the said demands and choses in action capable of collection, in our name or otherwise; and said trustee is also authorized to insure such goods and chattels as he deems wise, and to pay all taxes assessed against the same, and add the charges for such insurance and taxes to the debt hereby secured, to be payable forthwith, with interest. Said trustee is also authorized to gather all of the property of said first party covered hereby, and realize the most possible out of the salvage from the late fire, and to expend all such sums of money as may be necessary therefor, and as may be necessary for the care and preservation thereof; and he may also repair said property, and put the same in the best possible condition for sale, so that the largest amount can be realized therefor."

Both these conveyances were attacked, because, it was claimed, they constituted an assignment of all the property of the company, in violation of the laws of the state of Michigan. Of these conveyances, Judge Hooker, delivering the opinion of the court, said:

"It appears from the foregoing that there is no claim that these instruments amounted to a valid assignment for the benefit of creditors. It is equally clear from the evidence that the company never intended to make such an assignment as would have been valid under How. Ann. St. § 8739, for it is plain that it at all times proposed to prefer certain creditors. The contention is not made that these instruments are, in effect, a valid assignment, so that a court of chancery can take jurisdiction, and enforce them as such, under section 8744. The question is, therefore, whether the instruments can stand as valid mortgages, or whether they must be held void, upon the ground that they attempt to transfer the absolute title to all of the debtor's property, in trust for the payment of preferred creditors, in contravention of Id. § 8739. The instrument covering the real estate contains no defeasance. It does, however, recite that the 'first party is desirous of securing payment of certain debts and indemnifying' certain parties, and requires the surplus to be returned to the company. There can be no doubt that this instrument would be held a mortgage if any question should arise upon it between the parties to it. The mortgagor could pay the indebtedness, and compel a reconveyance; and, if it did not, any attempt by the trustee to sell and convey the lands would be futile, without foreclosure. On the other hand, a court of equity might properly decree foreclosure in a suit between such parties. How, then, can it be said that the instrument itself was effective to convey an absolute title as against creditors, when it did not do so as between the parties; and, if it did not, what is to prevent creditors from reaching the equity of redemption? Manifestly, we cannot say that it is more than a mortgage when other creditors raise the question, and that it is only a mortgage when the secured creditor attempts to sell the property under it."

As we have said, this instrument is practically the same as the one now under consideration. There was not in that case in terms

any clause of defeasance, and the supreme court of Michigan took the view that the conveyance was a mortgage, and that the mortgagor could pay the indebtedness, and redeem the property. But it is said that this case is modified by the later cases of Webber v. Hayes, 117 Mich. 256, 75 N. W. 622, and Conely v. Collins (decided March 14, 1899) 78 N. W. 555. In Webber v. Hayes the instruments in question were held not to be common-law assignments. In speaking of this statute, Judge Hooker, who delivered the opinion in Austin v. Bank, supra, says:

"By referring to the statute (2 How. Ann. St. § 8739), we shall find that it invalidates such assignments where they create preferences between creditors, or where some of the debtor's property not exempt from execution is omitted from the instrument. In the present case there is no instrument which bears the semblance of a common-law assignment for the benefit of creditors, but a large number of instruments, of different kinds. running to different persons, executed at different times; in addition to which it appears that not all of the property was covered by instruments made before the suit was begun, and that some property was omitted from all of the instruments. The decisions upon this statute are numerous, and they clearly show that, before there is an opportunity for its application, it must appear that there is something in the nature of a common-law assignment to be attacked,—some instrument, the terms of which, but for the statute, would vest the debtor's title in another in trust for one or more creditors, whereby other creditors would be precluded from any remedy against the title or equity of the debtor. In short, attempts to provide for a portion of one's creditors by assignment to a trustee, or when confined to a portion of the debtor's property, are forbidden; but it does not follow that every attempt to dispose of property fraudulently will be construed to be a void common-law assignment for the benefit of creditors. Sheldon v. Mann, 85 Mich. 265, 48 N. W. 573; Warner v. Littlefield, 89 Mich. 329, 50 N. W. 721; Armstrong v. Cook, 95 Mich. 257, 54 N. W. 873; National Bank of Oshkosh v. First Nat. Bank of Ironwood, 100 Mich. 485, 59 N. W. 231; Austin v. Bank. 100 Mich. 620. 59 N. W. 597. There was, therefore, no occasion to submit this subject to the jury."

In Conely v. Collins there was a transfer of all of the property of the lumber company to a trustee, he to sell the same, and use the proceeds to pay the indebtedness. The conveyance was in exact form an assignment for the benefit of creditors. The court said:

"It is, therefore, void, as it makes preferences. The case falls within the rule laid down in Kendall v. Bishop, 76 Mich. 634, 43 N. W. 645; Burnham v. Haskins, 79 Mich. 35, 44 N. W. 341; Sheldon v. Mann, 85 Mich. 265, 48 N. W. 573; Hill v. Mallory (Mich.) 70 N. W. 1016. The learned court below was of opinion that the case is ruled by the case of Austin v. Bank, 100 Mich. 613, 59 N. W. 597. There the conveyances were worded as mortgages, and authorized the mortgagee to take possession upon default. They were held not to make an absolute title in the mortgagee."

As we have already said, the real-estate conveyance in Austin v. Bank contained no clause of defeasance. We do not understand the court, in the language quoted, to have reference to the real-estate mortgage upheld in Austin v. Bank; nor is there anything in the case undertaking to overrule that case. The authorities cited by the judge in which conveyances are held void will be found to be within the principle already stated, where either an attempt has been made to convey all the property by way of general assignment with preferences, or the trustee has been given title to and control of the property inconsistent with the rights of creditors. There is nothing in that case which requires any departure from the doctrine of Austin

v. Bank, nor do we understand the learned judge to intend in any wise to impair the authority of that case. We are, therefore, of opinion, following the decisions of the supreme court of Michigan in construing this statute, that the conveyance in question is not a general assignment for the benefit of creditors, but is in the nature of a mortgage or security for a debt, executed in good faith, and within the power of the party to prefer one creditor over another. Whether the instrument is to be strictly construed as a mortgage or not, it can be maintained as a trust created to sell lands for the benefit of creditors, as we understand the supreme court of Michigan in Bank v. Chapelle, 40 Mich. 451, where it was said:

"The statutes of this state expressly authorize trusts to be created to sell lands for the benefit of creditors. * * * If, instead of an absolute trust deed, we hold it to be a mortgage in form, as it was apparently intended to be, and was so held below, then there can be no objection to it unless fraudulent in fact. It certainly may be regarded as a mortgage in equity, because it was intended only as a security for a debt which the debtor may discharge at any time, and so release the land."

It is only where a trust is created in lands which amounts to a general assignment for the benefit of creditors, in which preferences are attempted, or the assigned property is put beyond the reach of creditors as to title and surplus, that it comes within the purview of the statute regulating common-law assignments. These conclusions render unnecessary consideration of the questions raised as to the sufficiency of the allegations of the bill. Finding no error in the conclusion reached by the circuit court, its judgment will be affirmed.